UNITED STATES of America,
Plaintiff-Appellant,

v.

Vidal SOTO–SOTO, Defendant-Appellee.

No. 77–1489.

United States Court of Appeals,
Ninth Circuit.

June 12, 1979.

Howard B. Matloff, Asst. U. S. Atty. (on the brief), Terry J. Knoepp, U. S. Atty., Howard B. Matloff, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellant.

Howard Frank, San Diego, Cal., for defendant-appellee.

Before BROWNING and CHOY, Circuit Judges, and FERGUSON,* District Judge.

FERGUSON, District Judge.

The government appeals from an order of the district court granting defendant's motion to suppress from evidence marijuana found in defendant's pickup truck by an agent of the Federal Bureau of Investigation at Calexico, California, a port of entry at the United States-Mexico border. We hold that the district court did not err in suppressing the evidence.

## FACTS

1. On October 28, 1976, Thomas J. Summers, Jr., an agent of the Federal Bureau of Investigation (FBI), was conducting an inspection to locate stolen vehicles. He was inspecting automobiles as they entered the United States from Mexico through the commercial gate at the port of entry at Calexico, California.

2. FBI Agent Summers selected for inspection late-model pickups, especially Fords and Chevrolets, as being likely to have been stolen in the United States and transported to Mexico.

3. At approximately 9:10 a. m., the defendant attempted entry into the United States through the commercial gate at Calexico. He was driving a 1976 Chevrolet pickup and this fact was the sole basis for Agent Summer's decision to stop the vehicle.

4. Agent Summers stopped the defendant's truck and informed him that he was with the FBI and that federal law enforcement agencies were conducting an inspection of vehicles to determine if they were stolen. Agent Summers asked the defendant to park the pickup in a designated area off to one side.

5. The defendant parked his pickup in the designated area. Agent Summers asked him for the registration papers for the pickup. The defendant handed him the papers and Agent Summers compared the registration number on these papers with the vehicle registration number on the safety sticker on the door post. The numbers were identical.

6. Agent Summers then went to the hood of the truck and lifted it. His purpose in lifting the hood was to check the confidential serial number stamped on the truck frame on the driver's side. Upon lifting the hood, he observed numerous packages beneath the hood. These packages were found to contain marijuana.

7. Agent Summers did not seek or receive consent from the defendant to open the hood. At no time did Agent Summers procure a warrant for any part of the search of the defendant's truck.

The district court held that: (1) Agent Summers had no founded suspicion upon which to stop the defendant's pickup and therefore had no authority to proceed under California Vehicle Code § 2805 and (2) this was not a border search under 19 U.S.C. § 482 because the search was conducted without participation by or coordination with customs agents. The district court held that the marijuana was illegally seized and granted the defendant's motion to suppress.

The government then made a motion to reconsider the motion to suppress, arguing that the defendant had no reasonable expectation of privacy when he crossed the Mexico-United States border and therefore the search was not illegal. The district court denied this motion.

The government appeals from the district court's decisions reasserting that (1) the search was authorized under California Vehicle Code § 2805; (2) the search was authorized as a border search; and (3) the search was reasonable because the defendant had no expectation of privacy at the border.

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

CALIFORNIA VEHICLE CODE § 2805

At the time of this search, § 2805 of the California Vehicle Code stated:

A member of the California Highway Patrol may inspect any vehicle of a type required to be registered under this code on a highway or in any public garage, repair shop, parking lot, used car lot, automobile dismantler's lot, or other similar establishment, for the purpose of locating stolen vehicles, investigating the title and registration of vehicles, or inspection of vehicles wrecked or dismantled.

FBI Agent Summers claims that the FBI was conducting vehicle inspections in conjunction with the California Highway Patrol under the authority of § 2805. Even assuming that such cooperation was both present and proper, the inspection of defendant's pickup was not justified under § 2805.

The Supreme Court recently addressed the issue of discretionary spot checks in *Delaware v. Prouse*, —— U.S. —— -, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979):

Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

Even prior to this case, this Circuit has limited the lawful authority under § 2805 to situations where there is founded suspicion of illegal activity. *See United States v. Carrizoza-Gaxiola*, 523 F.2d 239 (9th Cir. 1975) (authority to conduct search under Arizona statute similar to § 2805 requires founded suspicion); *United States v. Solomon*, 528 F.2d 88, 90–91 (9th Cir. 1975) (actions and statements of defendant prior to search gave rise to reasonable belief that automobile contained evidence that it was stolen); *United States v. Fisch*, 474 F.2d 1071, 1075 (9th Cir.), *cert. denied*, 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973) (stopping and searching van which had been seen twice near the site of air drop of marijuana was justifiable and lawful).

The situation in *United States v. Carrizoza-Gaxiola, supra*, is most similar to the instant case. There, a team of federal and Arizona law enforcement officers were looking for stolen cars and were stopping automobiles matching a certain broad profile of vehicles commonly stolen in Phoenix and Tucson and transported to Mexico. Defendant was stopped because he was driving a late-model Ford LTD, a vehicle included in the profile. This court relied on *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and required founded suspicion to justify the search in accordance with the Fourth Amendment. The government claimed that founded suspicion was present by virtue of several factors: the driver was Mexican, he was driving toward Mexico in a car with Mexican license plates and late-model Ford LTDs were in the profile of commonly stolen cars. These reasons were found to be insufficient to create founded suspicion:

Founded suspicion requires some reasonable ground for singling out the person stopped as one who was involved or is about to be involved in criminal activity. (citations omitted) Driving a car as common as a Ford LTD is not suspicious nor is driving it toward Nogales. That the driver appeared to be Mexican and that the car had Mexican license plates add nothing beyond residence in the country to which some stolen vehicles have been transported. Mexicans commonly drive into this country and then, not surprisingly, drive back. 523 F.2d at 241.

In this case, the defendant was stopped solely because he was driving a late-model Ford pickup. A stop and search based only on this factor is not authorized under California Vehicle Code § 2805, limited as required by the Fourth Amendment.

BORDER SEARCH

The government claims that the search by FBI Agent Summers of the defendant's

pickup was a "border search" authorized under 19 U.S.C. § 482:

> Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, whenever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; . . . .

The term "border search" describes searches under § 482 without warrant or probable cause and incorporates certain limitations imposed upon the right of customs agents to conduct these searches. *United States v. Weil*, 432 F.2d 1320, 1323 (9th Cir. 1970).

■ Two established interests conflict in this case. There is the interest of the federal government in regulating and protecting its borders. There is also the interest of the defendant in the constitutional guarantee to protection from unreasonable search and seizure under the Fourth Amendment. These interests require careful balancing. *Delaware v. Prouse, supra*, ———— U.S. at ————, 99 S.Ct. 1391; *United States v. Martinez-Fuerte*, 428 U.S. 543, 555, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1975); and *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1974). It is firmly established that the right of the sovereign to search at the borders supersedes that of the individual's privacy rights and that border searches, conducted pursuant to the "long-standing right of the sovereign to protect itself," are not subject to the warrant provisions of the Fourth Amendment. *United States v. Ramsey*, 431 U.S. 606, 616–617, 97 S.Ct. 1972, 1979, 52 L.Ed.2d 612 (1976).

This long-standing right, however, is not without qualification and limitation. In September 1789, Congress passed the first customs statute two months before it proposed the Bill of Rights. That statute limited the right of the sovereign by specifically delegating the sovereign's authority to customs officials. *See United States v. Ramsey, id.*

Today, § 482 sets forth the requirements imposed by Congress for a valid border search. The only persons empowered to stop and search are "officers or persons authorized to board or search vessels." They may stop, search, and examine any "vehicle, beast or persons" when they suspect there is merchandise which is subject to duty or is illegally introduced into the United States. They may open a trunk or envelope when they have "reasonable cause to suspect there is merchandise imported contrary to law."

The courts have carefully examined whether searches conducted without warrant or probable cause fall within this statutory limitation. Most of the cases analyze whether the search was conducted within sufficient proximity or relationship to the border to be authorized by the statute as in pursuit of merchandise brought illegally into the country. *See, e. g., United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975) (searches at traffic checkpoints away from border do not qualify as border searches and therefore may only be conducted if there is consent or probable cause); *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) (search of petitioner's automobile by a roving patrol on a California road that lies at all points 20 miles north of the Mexican border is not a border search); *United States v. Bowman*, 502 F.2d 1215, 1220 (5th Cir. 1974) (warrantless search of defendant's automobile was made "within a reasonable time of the appellants' entry and within a reasonable distance from the crossing point" so as to qualify as a border search); *United States v. Weil, supra* (search was a border search even though customs agents had not actually seen defendant cross the border when circumstances made it reasonably certain that

defendant had crossed border); *Alexander v. United States*, 362 F.2d 379 (9th Cir.), *cert. denied*, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966) (border search valid even though customs agents lost surveillance of defendant's automobile for short period after it crossed the border).

■ The authorizing statute limits the persons who may legally conduct a "border search" to "persons authorized to board or search vessels." In *United States v. Thompson*, 475 F.2d 1359, 1362-63 (5th Cir. 1973), the court found that border patrol officers of the Immigration and Naturalization Service could conduct valid border searches because there had been express and proper delegation, by statute and regulation, of Customs authority under the supervision of the Treasury Department to the Border Patrol. In *Thompson*, the border patrol officers conducted a search and found a plastic bag with marijuana in the trunk of the car. As border patrol officers, they were authorized only to search automobiles for aliens being brought into the United States. The search, which was conducted at the border, was legal only because the border patrol officers conducting the search were also authorized as customs agents:

> As border patrol officers, Garza and Sandstede could not have searched the bag because it obviously was too small to have contained aliens, the object of the border patrol search. The officers were entitled to assume their role as customs agents, however, once the search disclosed incriminating circumstances which indicated violations of the customs laws. 475 F.2d at 1364.

*See also United States v. McDaniel*, 463 F.2d 129 (5th Cir. 1972), *cert. denied*, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973) (border patrol agents wear "two hats," one as an immigration officer and the other as a customs officer) and *Olson v. United States*, 68 F.2d 8 (2d Cir. 1933) (Coast Guard officers, because they are authorized by statute to "board and search vessels," may conduct border searches pursuant to 19 U.S.C. § 482).

■ The search here fails to meet at least two of the criteria for a § 482 "border search." The search was conducted by an FBI agent not a customs or immigration officer. There was no delegation of authority to this agent to conduct this search. The government claims authority under the California Vehicle Code § 2805 (discussed above) and 18 U.S.C. §§ 2311–2313. These latter statutes merely define the federal crimes of transporting and sale or receipt of stolen vehicles; they do not authorize FBI agents to conduct searches without warrant, consent or probable cause. The government makes no claim that the FBI agent is a person "authorized to board or search vessels" within § 482 or that customs authority had been delegated to him. The FBI agent surpassed his authority as an FBI agent and can claim no additional authority from other statutes.

In addition, Agent Summers testified that his sole purpose in conducting the search was not to enforce importation laws but rather to check whether the defendant's car was stolen. He acted for general law enforcement purposes, not for enforcement of customs laws; he never inquired whether the defendant had anything to declare.

If Agent Summers had made this search in pursuit of general law enforcement away from the border, there would be no question that the search was illegal. Now the government seeks to justify the search on the mere basis that it occurred at the border. This asks too much. Congress and the courts have specifically narrowed the border searches to searches conducted by customs officials in enforcement of customs laws. As this court held in *Alexander v. United States, supra*:

> In conferring upon customs officers such broad authority, circumscribed only by Constitutional limitations of the Fourth Amendment, the Congress has in effect declared that a search which would be "unreasonable" within the meaning of the Fourth Amendment, if conducted by police officers in the ordinary case, would be a reasonable search if conducted by Customs officials in lawful pursuit of un-

lawful imports. Judicial recognition of this distinction has given rise to the term "border search," in order to distinguish official searches which are reasonable because made solely in the enforcement of Customs laws from other official searches made in connection with general law enforcement. 362 F.2d at 381

The search of the defendant's truck was made at the border by an FBI agent as part of a general law enforcement effort. Unlike in *United States v. Odneal*, 565 F.2d 598 (9th Cir. 1977), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978), Agent Summers was not working in cooperation with customs agents. The search here violated the statutory authority of FBI agents and the statutory authority for conducting border searches. The search is therefore illegal, the exclusionary rule applies, and the district court properly suppressed the evidence.

■ The application of the exclusionary rule for violations of agency regulations was recently addressed by the Supreme Court in *United States v. Caceres*, U.S. ——, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). There the Supreme Court held that the exclusionary rule did not apply to tape recordings which were obtained in violation of IRS regulations. The Court feared that rigid application of the exclusionary rule would have a serious deterrent impact on the formulation of additional standards and regulations by agencies. — U.S. at ——, 99 S.Ct. 1465. The Court, however, specifically distinguished the *Caceres* situation from one where there has been a violation of a federal statute or the Constitution. —— U.S. at ——, 99 S.Ct. 1465. In footnote 21, —— U.S. at ——, 99 S.Ct. at 1473, the Court noted that "[s]ince no statute was violated by the recording of respondent's conversations, this Court's decision in *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, is likewise inapplicable." In *Miller*, the Court excluded evidence obtained in violation of District of Columbia law and the substantially identical requirements of a federal statute.

Here, the FBI agent's action violated federal statutes. He ignored the divisions of authority which Congress carefully legislated. As in *Miller, supra*, the exclusionary rule is applicable.

This court need not harbor the same fears expressed by the Supreme Court in *Caceres, supra*. Application of the exclusionary rule here will not likely deter Congress from continuing to define the powers of respective branches of federal law enforcement. Rather, exclusion will deter individual officers from ignoring these definitions.

Important statutory limitations which protect the balance between sovereign power and constitutional rights were violated here. Whether the defendant was injured in any way or his constitutional rights were violated is not an essential issue. Statutory law was disregarded. Exclusion of the evidence seized is the only available effective deterrent of such disregard. Unlike in *United States v. Newell*, 578 F.2d 827 (9th Cir. 1978) where this court refused to exclude statements obtained in violation of military law and regulations because exclusion would have only a "remote" effect upon deterrence of military investigative agents, the evidence obtained here was solely for purposes of prosecution in state or federal court and exclusion by this court will directly deter illegal conduct in future searches at the border. FBI agents and other general law enforcement officers will know that they will not succeed in any attempt to expand their authority by searching at a border.

Because this court affirms the district court's suppression of the evidence on the basis of the statutory violation, it is not necessary to discuss appellant's argument as to "expectation of privacy," an issue relevant only to analysis of a constitutional violation.

The district court ruling is AFFIRMED.