**UNITED STATES of America**

v.

**SHAEFER, MICHAEL AND CLAIRTON SLAG, INC., Appellants.**

**No. 80–1609.**

United States Court of Appeals, Third Circuit.

Argued Oct. 15, 1980.

Decided Dec. 24, 1980.

Rehearing Denied February 13, 1981.

---

Thomas A. Livingston (argued), Dennis J. Clark, Livingston, Miller, O'Malley & Clark, Pittsburgh, Pa., for appellants.

Robert J. Cindrich, U. S. Atty., Edward J. Schwabenland, Asst. U. S. Atty. (argued), Paul J. Brysh, Asst. U. S. Atty., Lynne Stewart, Legal Intern, Pittsburgh, Pa., for appellee.

Before GIBBONS, ROSENN, Circuit Judges, and HANNUM *, District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Michael Schaefer and Clairton Slag, Inc., appeal from judgments of sentence following their conviction of making false statements, representations or reports with respect to material delivered to a federally funded highway project.[1] Schaefer was

---

* Honorable John B. Hannum, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Whoever, being an officer, agent, or employee of the United States, or of any State or Territory, or whoever, whether a person, association, firm, or corporation, knowingly makes any false statement, false representation, or false report as to the character, quality, quantity, or cost of the material used or to be used, or the quantity or quality of the work performed

also convicted of conspiracy.[2] They contend that the trial court erred in denying without an evidentiary hearing their motion to suppress evidence obtained as a result of a warrantless search and seizure by the Pennsylvania State Police on October 21, 1977. The trial court held that for the inspection and seizure which occurred on that date neither a warrant nor probable cause were required. We hold that this ruling was error, and remand for a suppression hearing.

The evidence at the trial showed that in the fall of 1977 the Pennsylvania State Police were investigating the possibility that Clairton Slag, Inc., a manufacturer of asphalt paving materials, was "short-weighing" asphalt it supplied for a Pennsylvania Department of Transportation road resurfacing job in Washington County, financed in part with federal funds. Schaefer is the President of Clairton Slag, Inc., and individually owns the trucks which deliver its products. The evidence does not suggest that the state police were investigating an isolated fleeting incident. Rather, they apparently suspected a course of conduct. On October 21, 1977 Corporal Stetor of the state police stopped and weighed five of Schaefer's trucks carrying asphalt to the job site. He obtained from the truck drivers the weigh bills they carried, which had been prepared by agents of Clairton Slag. These were photocopied and later returned. Three days later Corporal Stetor stopped and weighed the same five trucks, this time empty. Comparing the tare (empty) weights of the trucks with their gross (loaded) weights, he determined that the amount of asphalt in each truck was less than was indicated on the weigh bills seized on October 21. There is no evidence of record that Corporal Stetor had any information giving probable cause to believe on October 21 that the five trucks he stopped were short weighted. Nor is there any evidence of record suggesting that if he had such information obtaining a warrant was not practical. Nor is there any evidence of record suggesting that anyone having legal capacity to do so consented to Stetor's stopping the trucks and seizing the weigh bills for photocopying.

The government contends that what occurred on October 21, 1977 was not a search or seizure, that if it was neither defendant has standing to object to it, and that if they do have standing the warrantless search and seizure was nevertheless reasonable. We address these contentions separately.

## A. There Was a Search and Seizure

■ The government's contention that stopping motor vehicles on the highway and subjecting them, or documents relating to their operation, to police inspection is not a search and seizure is foreclosed by the holdings in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) and *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). In the former Justice White wrote for the court:

> The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitutes a "seizure" within the meaning of those amendments, even though the purpose of the stop is limited and the resulting detention quite brief.

or to be performed, or the costs thereof in connection with the submission of plans, maps, specifications, contracts, or costs of construction of any highway or related project submitted for approval to the Secretary of Transportation; or whoever knowingly makes any false statement, false representation, false report, or false claim with respect to the character, quality, quantity, or cost of any work performed or to be performed, or materials furnished or to be furnished, in connection with the construction of any highway or related project approved by the Secretary of Transportation; or

Whoever knowingly makes any false statement or false representation as to a material fact in any statement, certificate or report submitted pursuant to the provisions of the Federal-Aid Road Act approved July 11, 1916 (39 Stat. 355), as amended and supplemented,

Shall be fined not more than $10,000 or imprisoned not more than five years, or both. 18 U.S.C. § 1020.

2. 18 U.S.C. § 371.

440 U.S. at 653, 99 S.Ct. at 1396. In this case the trucks were stopped, the occupants detained, and documents seized. *Delaware v. Prouse* reiterated the standard announced in *United States v. Brignoni-Ponce,* that warrantless stops of motor vehicles are prohibited by the Fourth Amendment absent specific articulable facts which reasonably support an inference of a violation of the laws respecting use of the vehicle. The initial stop was a seizure within the meaning of that term in the Fourth Amendment, and of course all else flowed from the initial stop.

### B. Defendants Have Standing to Object to it

■ In *Rakas v. Illinois,* 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) the Court, rejecting a contention that a passenger in a car had a legitimate expectation of privacy in its glove compartment, observed that

> "we are not at all sure that the determination of a motion to suppress is materially aided by labeling the inquiry identified in Jones [v. United States, 362 U.S. 257, [80 S.Ct. 725, 4 L.Ed.2d 697] (1960)] as one of standing, rather than simply recognizing it as one involving the substantive question whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge."

The defendants in *Rakas,* Justice Rehnquist noted, "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." 439 U.S. at 148, 99 S.Ct. at 433. Here, in contrast, Schaefer owns the trucks which were seized, and Clairton Slag, Inc. had at the time of the seizure a possessory interest in them, exercised through its driver agents. Moreover Clairton had property and possessory interests in the weigh bills which were seized and copied. Neither Clairton's corporate status nor its commercial activity puts it outside the protection of the Fourth Amendment. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920); *Marshall v.*

*Barlow's Inc.,* 436 U.S. 307, 311, 98 S.Ct. 1816, 1819, 56 L.Ed.2d 305 (1977); *Mancusi v. Deforte,* 392 U.S. 364, 367, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968).

■ The government argues that neither defendant was present at the time of the seizure, and thus that neither defendant has a "privacy" interest which was invaded. But the Fourth Amendment's prohibition against seizures of property does not depend upon presence of the owner. The court has repeatedly found Fourth Amendment violations in police intrusion into unoccupied vehicles. *E. g., Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1970). Moreover expectations of privacy with respect to personal property survive even lawful termination of possession. *United States v. Chadwick,* 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1976); *United States v. Diggs,* 569 F.2d 1264 (3d Cir. 1977). Finally we note that Clairton Slag, Inc. was present at the seizures in the only way a corporation can ever be present, by its agents, the drivers. Thus we reject the government's contention that neither defendant had a Fourth Amendment interest in objecting to the seizure of the trucks or their contents.

### C. The Warrantless Seizure Was on This Record Unreasonable

■ It is undisputed on the record before us that Corporal Stetor's purpose in stopping the trucks was an investigation into short weighting. The government does not contend that the record could support such an investigatory search without a warrant on any theory of exigent circumstances or even of probable cause. It attempts to justify the search on the theory that trucking asphalt is a closely regulated business. Thus, it argues, the seizure can be justified on the authority of *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) and *Colonnade Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1969). These cases recognize an exception to the warrant requirement for businesses which knowingly enter a regulated industry, on the theory that by doing so

they consent to searches and seizures made pursuant to a regulatory scheme. But as Justice White noted in *Marshall v. Barlow's, Inc.:*

> The clear import of our case is that the closely regulated industry of the type involved in *Colonnade* and *Biswell* is the exception.

436 U.S. at 313, 98 S.Ct. at 1821 (1977). The *Barlow's* Court rejected the contention of the Secretary of Labor that enforcement of the Occupational Safety and Health Act of 1970, a pervasive regulatory scheme, required elimination of the warrant requirement. *Barlow's* teaches both that the regulated industries exception is a narrow one, and that a warrantless search can be placed within that exception only if it is in fact made pursuant to and in enforcement of the regulatory scheme. *See also Camara v. Municipal Court,* 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967) ("... because the [regulatory scheme] inspections are neither personal in nature nor aimed at the discovery of crime, they involve a relatively limited invasion of the urban citizen's privacy.").

The regulatory scheme on which the government relies to justify Corporal Stetor's seizure is that embodied in 75 Pa.C.S.A. § 4901 et seq. The Pennsylvania statute makes it unlawful to move "on any highway any vehicle ... of a size or weight exceeding the limitations provided in this chapter ...", 75 Pa.C.S.A. § 4901(a), and authorizes any police officer to require the driver of any vehicle to stop and submit to weighing. 75 Pa.C.S.A. § 4981(a).

The government concedes that Corporal Stetor was not aware of specific articulable facts which would reasonably support an inference that the Pennsylvania statute dealing with overweight vehicles was being violated. Quite the contrary; the suspicion was that the trucks were underweight, a subject matter with which the statute relied on does not deal. Nor does the government contend that Corporal Stetor had set up a general roadblock in which all trucks were being weighed, which might be authorized by the Pennsylvania statute, and which arguably could satisfy the Fourth Amendment. *See, Delaware v. Prouse,* 440 U.S. 648, 657, 99 S.Ct. 1391, 1398, 59 L.Ed.2d 660 (1979). It concedes that the purpose of the stop was unrelated to enforcement of the overweight law, and was for an investigatory rather than regulatory purpose. The government would have us hold that such pretextual use of the Pennsylvania weight limit law satisfies the Fourth Amendment. Such a holding is precluded not only by *Delaware v. Prouse, supra, Marshall v. Barlow's, Inc., supra,* and *Camara v. Municipal Court, supra,* but also by the basic rule that the courts will not countenance pretextual use of a regulatory statute for an investigatory purpose unrelated to the regulatory scheme. *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964). That the pretext was by an employee of the Commonwealth rather than of the United States makes no difference, for as the Court noted in *Elkins v. United States,* 364 U.S. 206, 221, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960) it would be intolerable for federal courts to encourage illegal activity by state officers in the interest of federal law enforcement.

Because the trial court refused to hold an evidentiary hearing on the suppression motion, we cannot tell whether the government would in such a hearing be able to establish reasons why, despite the admitted absence of a warrant, the October 21 seizure was lawful. For the same reason we are unable to tell how much of the government's evidence presented at trial was untainted by the fruits of that seizure, assuming it was, as appears on this record, unlawful. The defendants do not urge any other ground for reversing their conviction. In these circumstances the proper course is to remand the case to the district court for an evidentiary hearing on the suppression motion. If in such a hearing it is determined that there is some other justification for the warrantless seizure than the Pennsylvania's overweight statute, the conviction may

stand. Moreover if the government cannot establish that the seizure satisfied the Fourth Amendment, but can establish that all the evidence used in the trial had a source independent of the October 21 seizure and its fruits, the conviction may stand. But if it is determined that the seizure cannot be justified and that evidence derived from it was used at the trial, a new trial must be granted.