**William R. RUIZ, Kevin J. Nally and John Greco, Jr., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**The COMMISSIONER OF the DEPART-MENT OF TRANSPORTATION OF the CITY OF NEW YORK and the New York State Department of Motor Vehicles, Traffic Violations Bureau, Defendants.**

No. 85 Civ. 3263 (RJW).

United States District Court, S.D. New York.

June 8, 1988.

Peter L. Zimroth, Corp. Counsel of the City of New York, New York City, for defendant Commissioner; Anne P. Ward, Gabriel Taussig, Gary R. Tarnoff, of counsel.

Robert Abrams, Atty. Gen., of the State of New York, New York City, for defendant Dept. of Motor Vehicles; August L. Fietkau, Richard G. Liskov, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs, who are truck drivers, brought this action to challenge the enforcement against them of New York City ("the City") regulations setting weight limits on trucks using streets and highways within the City. On cross-motions for summary judgment, the Court dismissed the action in its entirety in an opinion dated January 21, 1988 ("the January 21 Opinion"). 679 F. Supp. 341 (S.D.N.Y.1988). Plaintiffs timely moved for reargument and reconsideration of the Opinion pursuant to Rule 3(j) of the Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York ("local Rule 3(j)"), and pursuant to Rule 59(e), Fed.R.Civ.P. For the reasons that follow, the Court adheres to its January 21 Opinion and denies plaintiffs' motion.

## BACKGROUND

For purposes of this decision, the Court will assume familiarity with its January 21 Opinion. Briefly, in that Opinion, the Court first considered the application of res judicata to plaintiffs' claims, based upon a prior determination in New York State Court upholding the challenged regulations in a suit brought by other drivers represented by the same counsel retained by the instant plaintiffs. The Court concluded that although it may not be inappropriate on the facts of the case to apply res judicata against plaintiffs, the Court refrained from so doing in light of its disposition of the merits.

Altieri, Kushner, Miuccio & Frind, New York City, for plaintiffs; Alexander A. Miuccio, Debra Ruth Wolin, of counsel.

On the merits, plaintiffs challenged the validity of the City's traffic regulations prohibiting the operation on its streets and

highways of any vehicle exceeding 73,280 pounds. New York, N.Y., Traffic Regulations art. 19, § 211(10) (amended 1985) ("former section 211(10)").[1] A provision of the Federal Surface Transportation Assistance Act of 1982 ("STAA") threatens the withholding of federal highway funds from any state which does not permit vehicles weighing up to 80,000 pounds to use the federal highways within its borders. 23 U.S.C. § 127(a).[2]

The New York State legislature, concerned with the potential loss of millions of dollars in federal highway funds, amended its own laws in an effort to ensure compliance with the requirements of the STAA. Section 385(20) of New York State's Vehicle and Traffic law prohibits both the state and its political subdivisions from "enact[ing] [ ]or enforc[ing] any law, statute, ordinance, rule or regulation with respect to vehicle dimensions or weights which shall violate any of the provisions of the [STAA]." N.Y.Veh. & Traf.Law § 385(20) (McKinney 1986). Furthermore, "[a]ny such law, statute, ordinance, rule or regulation which results in a notification of an imminent loss or withholding of federal highway aid to the state shall to the degree inconsistent hereafter be deemed null and void and shall not be enforced." *Id.*

In its January 21 Opinion, the Court considered and rejected plaintiffs' contentions that former section 211(10) was impermissibly vague, that it was amended without proper authority in violation of plaintiffs' due process rights, that the weighing of plaintiffs' trucks by unauthorized personnel violated plaintiffs' Fourth Amendment rights, that the regulation violated the Commerce Clause, and that it was preempted by the STAA. On reargument, plaintiffs maintain only their vagueness, due process and Fourth Amendment claims.

## DISCUSSION

The standard for granting a motion for reargument is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court. Such motions may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision. *Caleb & Co. v. E.I. DuPont De Nemours & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y.1985) (citing *New York Guardian Mortgagee Corp. v. Cleland*, 473 F.Supp. 409, 420 (S.D.N.Y. 1979)).[3] Plaintiffs' contentions on reargument fail to meet this standard. Accordingly, the motion is denied.

### 1. Fourth Amendment Claim

Plaintiffs' trucks were stopped and weighed by regulation enforcement offi-

---

1. New York, N.Y., Traffic Regulations art. 19, § 211(10) (amended 1985) provided:

   A single vehicle or a combination of vehicles having three axles or more and equipped with pneumatic tires, when loaded, may have a total weight on all axles not to exceed thirty-four thousand pounds, plus one thousand pounds for each foot and major fraction of a foot of the distance from the center of the foremost axle to the center of the rearmost axle.... *In no case, however, shall the total weight exceed seventy-three thousand two hundred and eighty pounds* without any tolerance for enforcement purposes.
   (emphasis added).

2. 23 U.S.C. § 127(a) provides in part:

   *No funds* authorized to be appropriated for any fiscal year under provisions of the Federal–Aid Highway Act of 1956 *shall be apportioned to any State which does not permit* the use of the National System of Interstate and Defense Highways within its boundaries by vehicles with a weight of twenty thousand

   pounds carried on any one axle, including enforcement tolerances, or with a tandem axle weight of thirty-four thousand pounds, including enforcement tolerances, or *a gross weight of at least eighty thousand pounds* for vehicle combinations of five axles of more. However, the maximum gross weight to be allowed ... may not exceed eighty thousand pounds.
   (emphasis added).

3. The cited cases applied the standard set forth above to motions for reargument pursuant to local Rule 3(j). A motion for reconsideration pursuant to Rule 59(e), Fed.R.Civ.P., is addressed to the sound discretion of the trial court. *E.g., McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983). A motion pursuant to Rule 59(e) raises the same concerns regarding judicial economy and the finality of judgments as does a motion pursuant to local Rule 3(j). Accordingly, in the exercise of its discretion, the Court will apply the Rule 3(j) standard to the Rule 59(e) motion and will consider plaintiffs' motions under both rules together.

cers, who were employees of the City Department of Transportation. At the time of the stops in question, the City's traffic regulations authorized police officers and employees of the Bureau of Weights and Measures to stop and weigh trucks. New York, N.Y., Traffic Regulations art. 19, § 212 (amended 1985) ("former section 212").[4] Plaintiffs argue that former section 212 did not authorize regulation enforcement officers to stop their trucks, and for purposes of this motion, the Court has accepted that assertion.

Plaintiffs contend that the stop of their trucks without a warrant by unauthorized personnel constitutes a *per se* violation of their Fourth Amendment rights. They argue that the Court's reliance on *United States v. Harrington*, 681 F.2d 612 (9th Cir.1982), *cert. denied*, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985), is misplaced because *Harrington* applies only to warrant-authorized searches. Plaintiffs base their reading of *Harrington* on *United States v. Whiting*, 781 F.2d 692 (9th Cir.1986). *Whiting*, though, stands only for the narrow proposition that the authority granted by 19 U.S.C. § 482 to customs officers to conduct border searches is to be narrowly construed. *Id.* at 696 & n. 9. A border search conducted by an FBI agent, as in *United States v. Soto–Soto*, 598 F.2d 545 (9th Cir.1979), or by an agent of the Office of Export Enforcement of the Department of Commerce, as in *Whiting*, is unconstitutional because these agents are not authorized by section 482 to conduct such searches.

The Fourth Amendment protects citizens from unreasonable searches. The reasonableness of a search depends, *inter alia*, on the purposes of the search, the conduct of the search, and on the extent to which the search intrudes upon reasonable expectations of privacy. A court must weigh the individual's Fourth Amendment interests against the state's legitimate law enforce-ment interests. *E.g.*, *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

■ *Whiting* and *Soto–Soto* must be understood in this light. In *Soto–Soto* the FBI agent stopped the defendant's late model pick-up truck at the United States border with Mexico to check whether the truck had been stolen. Upon opening the hood of the truck to view the Vehicle Identification Number stamped on the engine block, the agent found illegal drugs. The drugs were later suppressed, because the court ruled that the search was unreasonable. The agent had no warrant, no probable cause to believe the truck was stolen, and was not authorized by statute to conduct a warrantless border search. A warrantless search of a car at a fixed checkpoint is unreasonable absent probable cause. *United States v. Ortiz*, 422 U.S. 891, 896, 95 S.Ct. 2585, 2588, 45 L.Ed.2d 623 (1975). Because the FBI agent in *Soto–Soto* was not authorized by statute to conduct a border search, which requires neither a warrant nor probable cause, and because the search was carried out for a purpose not authorized by section 482, the search was illegal.

■ Similarly, in *Whiting*, an agent of the Office of Export Enforcement seized and searched a sealed package that the defendant had deposited with the United States Postal Service. The agent was not a "law enforcement agent" authorized to obtain a search warrant under Rule 41(a), Fed.R.Crim.P., nor was he authorized to conduct a warrantless border search pursuant to 19 U.S.C. § 482. The search of the defendant's package was, therefore, unreasonable and illegal. Absent exigent circumstances, the search of a closed container requires a warrant. *E.g.*, *United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984) ("Letters and other sealed packages are in the gener-

---

4. New York, N.Y., Traffic Regulations art. 19, § 212 (amended 1985) provided, at the time plaintiffs' summonses were issued:

   Any member of the police force of the City of New York or any inspector of the Bureau of Weights and Measures of the Department of Consumer Affairs of the City of New York empowered by law to enforce these rules and regulations, having reason to believe that any vehicle described in § 211 of this article or the load thereon is unlawful, is authorized to stop, measure and weigh the same....

al class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable."). Accordingly, the court in *Whiting* held that the search of the sealed package, absent a valid warrant, was illegal.[5]

The Court continues to rely on *United States v. Harrington, supra,* where the Ninth Circuit upheld a search conducted by Customs Officers under circumstances where agents of the Drug Enforcement Agency had exclusive authority to investigate and carry out the search. The court distinguished *Soto–Soto* as follows:

> In striking the balance [between the government's interest in protecting its borders and the defendant's interest in fourth amendment protection against unreasonable searches and seizures], we have in effect held that Congress may declare certain searches normally violative of the fourth amendment to be constitutional when conducted at the borders. Because this creates an exception to standard constitutional practices, we enforce its limitations with great care. A warrantless border search by an FBI agent for general law-enforcement pur-

poses falls outside [19 U.S.C.] § 482. And when measured against normal fourth amendment standards, the search in *Soto–Soto* was patently unreasonable. We approved the suppression of the evidence seized not merely because the search violated a statute, but because the statutory violation undermined constitutional protections. The holding and the discussion of the exclusionary rule in *Soto–Soto* thus hinge on the border-search context; they do not apply in general or to the case before us.

*Id.* at 614 (citations omitted). The court then held that "a court should not automatically suppress evidence seized by an officer who, for some technical reason, should not have conducted the search." *Id.* at 615. This Court rejects plaintiffs' interpretation of *Harrington* that the sole "constitutional protection" at issue in *Soto–Soto* was the protection against unauthorized warrantless seizures. Rather, the search in *Soto–Soto* was illegal because its conduct was patently unreasonable when measured against normal Fourth Amendment standards. *Id.* at 614. It may be that because of its inherent intrusiveness, a border search conducted by unauthorized per-

---

5. Plaintiffs rely on additional cases for their proposition that warrantless searches by unauthorized personnel are *per se* unreasonable. *See Alexander v. United States,* 390 F.2d 101, 108–09 (5th Cir.1968) (postal inspectors not authorized to conduct warrantless arrest; therefore, warrantless arrest by postal inspectors and search incident to that arrest were unlawful); *United States v. Viale,* 312 F.2d 595, 601 (2d Cir.), *cert. denied,* 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963) (agents lacked authority under law to arrest defendant without a warrant absent reasonable cause to believe defendant was committing or attempting to commit a misdemeanor in their presence); *United States v. Coplon,* 185 F.2d 629, 635–36 (2d Cir.1950), *cert. denied,* 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952) (where statute required warrant for arrest given time to obtain a warrant, a warrantless arrest absent exigency was invalid); *United States v. Bayley,* 240 F.Supp. 649, 652, 656–57 (S.D.N.Y. 1965) (search of entire home and garage at night upon execution of invalid arrest warrant held illegal).

In each of these cases, the challenged activity was the warrantless arrest of a person. An arrest is a particularly invasive form of police activity, yet exigent circumstances often surround an arrest. Therefore, the law permits a warrantless arrest upon probable cause, so long as strict statutory requirements are met. *See, e.g., United States v. Watson,* 423 U.S. 411, 423–24, 96 S.Ct. 820, 827–28, 46 L.Ed.2d 598 (1976).

Where statutory limitations on the power to arrest define the scope of Fourth Amendment reasonableness, an arrest outside the authority granted by statute is unconstitutional. *See Bissonette v. Haig,* 800 F.2d 812 (8th Cir.1986) (en banc) (allegation that plaintiffs were arrested by military in violation of Posse Comitatus Act, 18 U.S.C. § 1385, made out Fourth Amendment claim, because limitations imposed by statute defined accepted notions of reasonableness), *aff'd per curiam without a quorum,* —— U.S. ——, 108 S.Ct. 1253, —— L.Ed.2d ——, 56 U.S.L. W. 3645 (U.S. March 22, 1988). It is plain that in the case at hand, former section 212 did not define the bounds of reasonableness. In fact, the City has subsequently amended the provision expressly to authorize regulation enforcement officers to enforce truck weight limits on roads and highways within the City. New York, N.Y., Dept. of Transportation Regulations, art. 19, § 216 (replacing former section 212, renumbered). For these reasons, the arrest cases cited by plaintiffs do not support their contention that a warrantless stop conducted by unauthorized personnel is *per se* unreasonable.

sonnel will always be unreasonable. *See id.; United States v. Vasser,* 648 F.2d 507, 511 n. 3 (9th Cir.1980), *cert. denied,* 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360 (1981); *United States v. Johnson,* 641 F.2d 652, 659 n. 5 (9th Cir.1980). Be that as it may, this Court must undertake its responsibility in this case to determine whether, under all the circumstances, the stops challenged by plaintiffs were reasonable.

The stop of an automobile is a seizure implicating the Fourth Amendment. *E.g., Delaware v. Prouse, supra,* 440 U.S. at 653, 99 S.Ct. at 1396 ("[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief."). The strictures imposed by the Fourth Amendment depend on the nature of the particular form of enforcement action involved. *Compare United States v. Ortiz, supra,* 422 U.S. at 896, 95 S.Ct. at 2588, (search of private vehicles at fixed checkpoints must be based on probable cause) *with United States v. Martinez–Fuerte,* 428 U.S. 543, 562, 96 S.Ct. 3074, 3085, 49 L.Ed.2d 1116 (1976) (brief stop of car and questioning of occupant at fixed checkpoint may be carried out in the absence of any individualized suspicion).

Plaintiffs have filed with the Court an affidavit of Saverio Micillo, describing the implementation of the City's truck weight enforcement program. Mr. Micillo, a retired Regulation Enforcement Officer, was Project Coordinator for the unit within the Department of Transportation responsible for the stopping and weighing of trucks. Affidavit of Saverio Micillo, filed March 31, 1988 ¶¶ 1, 2 ("Micillo Aff."). Mr. Micillo selected and trained the Regulation Enforcement Officers who worked in the field and was their immediate supervisor from 1980 until his retirement in June 1984. *Id.* ¶¶ 2, 3. The Regulation Enforcement Officers in the field did not operate from written guidelines or rules. *Id.* ¶ 4. Rather,

they "were guided by their common sense." *Id.* ¶ 6.

Regulation enforcement officers would open up a weigh station and direct trucks to the station, where other officers would direct the truck onto the scale to be weighed. When a weigh station was open, all trucks would be stopped and weighed, provided there was space for them in the waiting area, whether or not there was reason to believe a particular vehicle was in violation of the weight or dimension laws. *Id.* ¶ 5. Because at times several vehicles would be lined up to be weighed, a vehicle could be detained for as long as twenty minutes before the weighing procedure was completed and it was allowed to proceed. *Id.* ¶ 7.

When assessing the reasonableness of a particular law enforcement practice, a court must "balanc[e] its intrusion on an individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *E.g., Delaware v. Prouse, supra,* 440 U.S. at 654, 99 S.Ct. at 1396. The public interest in enforcing weight and dimension limitations on vehicles using public roads is strong. The hazards caused by overweight trucks are well known, not only because of the greater damage they cause when involved in accidents and the greater likelihood of an accident when a truck is overloaded, but also because of the added wear heavy trucks cause to highways on which they travel. A requirement that stops be predicated on a warrant or based on individualized suspicion would be impractical because the flow of traffic tends to be too heavy to allow the particularized study of a given truck that would enable it to be identified as possibly overweight. Furthermore, a truck that exceeds applicable weight limitations looks much the same as a truck that meets the limitations. *See United States v. Martinez–Fuerte, supra,* 428 U.S. at 557, 96 S.Ct. at 3082. For effective enforcement of truck weight limitations, officers must be granted "wide discretion" in selecting the vehicles to be weighed. *See id.* at 563–64, 96 S.Ct. at 3085.[6]

---

**6.** Thus, the stops in question are not unreasonable even if the regulation enforcement officers did not have reason to believe plaintiffs' trucks were overweight, notwithstanding the language

While the need to weigh trucks at weigh stations absent any warrant or individualized suspicion is great, the consequent intrusion on Fourth Amendment interests is quite limited. The stop involves only a brief detention.[7] Neither the vehicle nor its occupants are searched. *See id.* at 557–58, 96 S.Ct. at 3082–83. Regulation enforcement officers charged with enforcing weight limitations were specially selected and trained for the job. Micillo Aff. ¶ 2. This careful oversight provided adequate protection of Fourth Amendment interests even in the absence of specific statutory authority for regulation enforcement officers to carry out the stops.[8]

of former section 212. Effective enforcement of weight limitations requires that stops be made without individualized suspicion. There is no suggestion that the purpose of the truck weight enforcement program described in the Micillo Aff. was other than to police against overweight trucks. The instant case, then, can be readily distinguished from *United States v. Shaefer, Michael & Clairton Slag, Inc.,* 637 F.2d 200 (3d Cir.1980), where the court ruled that stops to weigh commercial trucks could not be justified under the state regulatory scheme authorizing stops of overweight vehicles. The officer did not believe the trucks he stopped were overweight. "Quite the contrary; the suspicion was that the trucks were underweight, a subject matter with which the statute relied on does not deal." *Id.* at 204. Moreover, there was no showing that obtaining a warrant would be impracticable. *Id.* at 202. The fraud conviction for shortweighting asphalt being delivered to a federally financed construction site was therefore thrown out.

In any event, plaintiffs have made no showing sufficient to raise a triable issue of fact that the officers who stopped their trucks lacked reasonable cause to believe the trucks were overweight. The Micillo Aff. describes only general policy and sheds no light on the particular circumstances surrounding the stops challenged in this case.

7. Although the length of time a vehicle was detained in this case may have been greater than the detention experienced by travelers in *Martinez–Fuerte,* in all other respects the degree of intrusion in this case was substantially less than in *Martinez–Fuerte.* In the enforcement of weight limitations in the instant case, there was no search of vehicle interiors at all, and occupants were not questioned. Furthermore, the vehicles stopped were not private passenger cars, but large trucks used primarily in commerce. Plaintiffs' trucks were cement trucks used exclusively for business purposes.

8. The Court in no way relies on the closely-regulated-industry exception to the warrant requirement in reaching its conclusion that the stops of plaintiffs' trucks were reasonable and within the limitations imposed by the Fourth Amendment. Nevertheless, consideration of the principles behind that exception can shed some light on the present controversy.

Pursuant to the closely-regulated-industry exception, business premises may be searched without a warrant in industries where "the pervasiveness and regularity of the federal regulation" has reduced the proprietor's legitimate expectation of privacy. *New York v. Burger,* —— U.S. ——, 107 S.Ct. 2636, 2643, 96 L.Ed.2d 601 (1987). Such searches, however, are reasonable only if three criteria are met.

> First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." ... Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant."

*Id.* 107 S.Ct. at 2644 (citations omitted). Explaining the final requirement, the *Burger* Court required that the regulatory statute perform the two basic functions of a warrant: informing the owner that the search is being made pursuant to the law and has a properly defined scope, and limiting the discretion of the inspecting officers. *Id.*

The specific requirements of the closely-regulated-industry exception need not be met in this case, since the challenged enforcement procedure is not a search of business premises, but a short stop for the limited purpose of weighing large trucks. This Court, though, is cognizant of the interests to be protected by the limitations imposed on warrantless searches of business premises in closely regulated industries. In light of the limited nature of the intrusion and the training and supervision of the regulation enforcement officers, the Court concludes that plaintiffs' legitimate privacy interests were adequately protected.

Even in the case of a warrantless search of business premises pursuant to the closely-regulated-industry exception, the Court is not convinced that the absence of specific statutory authorization for a particular officer to conduct a search renders that search *per se* unreasonable. In deciding that the challenged search procedure provided a "constitutionally adequate substitute" for a search warrant, the *Burger* Court noted that, among other safeguards, the statute "notifies the operator as to who is authorized to conduct an inspection." *Id.* 107 S.Ct. at 2648. The Court also relied on the fact that inspections were made "on a regular basis." *Id.* See also *Donovan v. Dewey,* 452 U.S. 594, 603–04, 101 S.Ct. 2534, 2540, 69 L.Ed.2d 262 (1981)

Not only is the objective intrusion minimal, but the subjective intrusion in this case is insignificant as well. Plaintiffs do not argue that the challenged truck weight enforcement procedures generated any appreciable level of concern or fright on the part of lawful truck drivers. Truck weighing stations are a familiar sight along the nation's highways, and their function is well known. Any driver who is flagged down to have his or her truck weighed will suffer no suspense or anxiety as to the purpose for the stop. Furthermore, truck drivers can be charged with a general awareness that overweight trucks are prohibited from the roads and that trucks are subject to being weighed without advance warning.

■ Accordingly, in light of all the circumstances, the Court adheres to its decision that the truck weight enforcement procedure challenged here, as carried out by regulation enforcement officers of the Department of Transportation, did not violate plaintiffs' Fourth Amendment rights, even assuming that the regulation enforcement officers lacked specific statutory authority to stop and weigh the trucks.

### 2. Vagueness Challenge

■ In reasserting their vagueness challenge to former section 211(10), plaintiffs argue first that the Court improperly applied the less stringent vagueness test that is used for assessing the validity of economic regulations. Plaintiffs then argue that the regulation is impermissibly vague no matter which standard is applied.

The vehicle weight restriction challenged here had the dual purpose of vehicular safety and cost-savings. But regardless of its purpose, the challenged regulation achieved its goal through the regulation of economic activity. All of the considerations set forth by the Supreme Court in *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) for the application of a less strict vagueness analysis for economic regulations apply with full force in the instant case.

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

*Id.* at 498, 102 S.Ct. at 1193 (footnotes omitted). *Accord, Chalmers v. City of Los Angeles,* 762 F.2d 753, 757 (9th Cir.1985). Thus, the challenged weight regulation will be considered void for vagueness only in the event that it is so vague and indefinite as really to be no rule or standard at all, or if it is substantially incomprehensible. *Jones v. City of Lubbock,* 727 F.2d 364, 373 (5th Cir.1984); *Exxon Corp. v. Georgia Ass'n of Petroleum Retailers,* 484 F.Supp. 1008, 1014 (N.D.Ga.1979), *affirmed sub nom. Exxon Corp. v. Busbee,* 644 F.2d 1030 (5th Cir.), *cert. denied,* 454 U.S. 932 (1981). *Accord Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 725 F.2d 843, 855 (2d Cir.), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984).

(regulatory scheme "specifically defines the frequency of inspection"). The regularity of searches, though, is not a requirement of reasonableness, especially where the purposes of the regulatory scheme require frequent, unannounced searches. *United States v. Biswell,* 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972) (cited with approval in *United States v. Burger, supra,* 107 S.Ct. at 2648 n. 21). Similarly, specific statutory authorization is only one of several factors to be considered in assessing the reasonableness of a warrantless search pursuant to the closely-regulated-industry exception to the warrant requirement.

The purpose of specific statutory authorization is to warn an individual that he or she is subject to potential searches and to ensure that searches are conducted properly with due regard for an individual's privacy interests. Where, as here, the enforcing officers were specifically trained and supervised for the task, the interests to be protected by requiring statutory authorization are adequately preserved. Especially in this case, where "police officers" were authorized to stop and weigh trucks but "peace officers" were not, the distinction is too technical to render a stop by a "peace officer" *per se* illegal.

■ Plaintiffs do not challenge the clarity of the language in former section 211(10) itself. Rather, they argue that the local regulation becomes impermissibly vague when considered in light of section 385(20) of New York State's Vehicle and Traffic Law and in light of 23 U.S.C. § 127(a). As this Court noted in its January 21 Opinion, the effect of section 385(20) is not brilliantly clear. 679 F.Supp. at 351. However, when faced with a federal statute setting an 80,000 pound weight limitation on federal highways, a New York State regulation outlawing trucks in excess of 73,280 pounds, and a state statute prohibiting enforcement of any local regulation that violates the federal statute, "a person of ordinary intelligence"[9] would conclude that trucks exceeding 80,000 pounds are not permitted on federal highways within New York City. Only a lawyer could conclude that no weight restrictions at all were in force on federal highways within the City.

Plaintiffs have provided excerpts from a report by the New York State Legislative Commission on Critical Transportation Choices, in which the Commission expresses its view that former section 211(10) was in "direct conflict" with the weight limitations of the STAA. Exhibit B annexed to Order to Show Cause, filed January 27, 1988. Plaintiffs assert that the Report refutes the interpretation of section 385(20) offered by the Court in its January 21 Opinion. 679 F.Supp. at 351–52. The Court is not convinced that this report provides an authoritative interpretation of section 385(20). In any event, the Court's conclusion on the vagueness challenge does not rely on the correctness of its interpretation of section 385(20). See id. at 353 ("The Court recognizes that its interpretation of section 385(20) may not be inevitable."). So long as an economic regula-

tion alerts the parties to the character of the proscribed conduct, the existence of more than one conceivable interpretation will not render the regulation void for vagueness. Exxon Corp. v. Busbee, supra, 644 F.2d at 1034. Accord, Chalmers v. City of Los Angeles, supra, 762 F.2d at 758.[10]

The Court rejects plaintiffs arguments that former section 211(10) was unconstitutionally vague, and adheres to its prior decision.

### 3. Unauthorized Amendment Procedure Claim

■ Finally, plaintiffs argue that the informal enforcement policy adopted by the City, whereby former section 211(10) was applied against drivers on federal highways within the City only if their trucks exceeded 80,000 pounds, constituted an unauthorized amendment of the ordinance in violation of plaintiffs' Fifth Amendment right to due process. Plaintiffs, though, present no new arguments, nor do they provide any new authority to support their position, which was fully briefed for the Court prior to its January 21 Opinion.

The Court recognizes that in *L & L Started Pullets, Inc. v. Gourdine*, 762 F.2d 1 (2d Cir.1985), the due process claim was not properly before the Second Circuit, and it therefore did not rule on the issue. Nevertheless, the Second Circuit set forth a framework for considering such claims, which this Court used as a guide in its own analysis. Plaintiffs do not claim that the regulation enforcement officers failed to adhere to the City's informal enforcement policy, and there is no showing that the policy was unreasonable. See id. at 4. Furthermore, in this case, the enforcement policy was less strict than the published regulation. Plaintiffs can claim no harm

---

9. See, e.g., *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

10. The Court is not required to embrace a single authoritative, definitive interpretation of section 385(20) in order to resolve the vagueness challenge before it. Plaintiffs have not argued that

former section 211(10) was preempted by section 385(20). Even if they had, however, this Court might very well have chosen to abstain from resolving the issue, inasmuch as it would turn exclusively on an interpretation of state law. See *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

due to the relaxed enforcement of former section 211(10) on federal highways.

## CONCLUSION

In their motion for reargument and reconsideration of the Court's January 21, 1988 Opinion, plaintiffs have failed to set forth any matters or controlling decisions which might have materially influenced the earlier decision. Accordingly, the Court denies the motion in all respects and adheres to its prior decision. Defendants are enjoined from enforcing former section 211(10) against plaintiffs for a period of ten days from this date, so that plaintiffs will have an opportunity to apply to the Court of Appeals for a stay pending appeal pursuant to the provisions of Rule 8(a), Fed.R. App.P.

It is so ordered.