**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Richard Scott DOBSON,**
**Defendant/Appellant.**

**No. 85–5062.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1985.

Decided Feb. 4, 1986.

As Amended March 25, 1986.

Thomas Buck, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff/appellee.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, Cal., for defendant/appellant.

Before HUG and HALL, Circuit Judges, and JAMESON,* District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendant, Richard Scott Dobson, appeals from his conviction for possession of marijuana in United States Customs waters with intent to distribute. 21 U.S.C. § 955a(c). Defendant entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2) after the district court denied his motion to suppress evidence. We affirm.

## I

On June 5, 1984 the United States Coast Guard office in Long Beach, California received a bulletin to be on the lookout for a sailboat named *MIR*. United States Customs authorities in South Carolina issued the bulletin because they believed the *MIR* was subject to seizure and was possibly involved in smuggling marijuana. A prior owner of the *MIR* apparently surrendered title to the United States Customs Service (Customs) when he signed a notice of abandonment and assent to forfeiture on April 9, 1984.

Unable to take possession of the *MIR*, Customs notified the Coast Guard, which then placed the boat on a "Category 3" lookout. A Category 3 lookout instructs Coast Guard field units to board the vessel when sighted and, if the evidence warrants, to seize the boat and/or arrest any persons on board. A Coast Guard commander has no discretion under Category 3: if the suspect vessel is sighted, a boarding party must be sent to inspect the vessel's documentation.

On November 21, 1984 at 3:53 P.M. a Coast Guard helicopter sighted the *MIR* in international waters off the Southern California coast. The following day at 3:23 P.M. the *MIR* was sighted by helicopter in U.S. territorial waters. A coast guard cutter was ordered to intercept the *MIR*. At approximately 5:07 P.M. the cutter *Point Judith* intercepted the *MIR* and a boarding party was sent to check the boat's documentation. As the boarding party approached the *MIR*, members detected the smell of burning marijuana. Once on board the *MIR*, the boarding party's inspection for other persons aboard revealed plastic bags of marijuana. The Coast Guard arrested the crew, including the defendant who was the captain, and seized the *MIR* along with 12,144 pounds of marijuana.

Defendant argues on appeal that the marijuana evidence should be suppressed because the Coast Guard violated his fourth amendment right against unreasonable searches and seizures. We disagree.

---

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

## II

■ Whether the Coast Guard acted lawfully in boarding the *MIR* is a mixed question of law and fact reviewed *de novo.* *United States v. McConney,* 728 F.2d 1195, 1199–1205 (9th Cir.) (en banc), *cert. denied,* — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). *Cf. United States v. Howard,* 758 F.2d 1318, 1319–20 & n. 1 (9th Cir.1985); *United States v. Ritter,* 752 F.2d 435, 439 (9th Cir.1985).

## III

Title 19 U.S.C. § 1581(a) provides in part: "Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters ... and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle...." [1] The broad language of this statute authorizes customs searches without probable cause or even mere suspicion. However, "no Act of Congress can authorize a violation of the Constitution." *Almedia-Sanchez v. United States,* 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973).

Defendant argues that the Coast Guard's stop of the *MIR* without probable cause or suspicion was an unreasonable search and seizure under the fourth amendment.[2] He concedes that once the officers smelled the marijuana, they had probable cause to search the boat. But defendant contends that this fact cannot justify the initial stop. We believe that the Coast Guard's "stop" of the *MIR* can be justified either as a border search or document inspection consistent with the fourth amendment.

## A

■ A border search is by its very nature reasonable under the fourth amendment, and requires neither a warrant, probable cause, nor even articulable suspicion.

*United States v. Ramsey,* 431 U.S. 606, 616–19, 97 S.Ct. 1972, 1978–80, 52 L.Ed.2d 617 (1977); *United States v. Alfonso,* 759 F.2d 728, 733–34 (9th Cir.1985). The parties agree that the Coast Guard did not intercept the *MIR* at the precise point at which the boat crossed into U.S. territorial waters. A border search, however, need not occur at the physical border. In *Alfonso,* we explained:

> The practical difficulty of getting to and searching every vehicle or carrier at the precise moment it crosses land or sea borders has led to recognition that border searches need not always actually occur at the physical border.... Border searches may take place at the functional equivalent of the border.... The rules of the "border search" extend to crossings of ocean boundaries as well as the land boundaries with Mexico and Canada.

759 F.2d at 734 (citations omitted). Customs officials may thus conduct a border search of any ship arriving in port which is known to have sailed from international waters. *See, e.g., United States v. Solmes,* 527 F.2d 1370, 1372 (9th Cir.1975) (with respect to vessels coming from outside the territory of the United States, a vessel's anchorage in a domestic port is the functional equivalent of a border). *See also United States v. Tilton,* 534 F.2d 1363, 1365 (9th Cir.1976) (defendants arrested after dockside search revealed 880 pounds of marijuana; court remanded to determine if boat sailed from Mexican waters).

■ In this case, the Coast Guard knew the *MIR* had come from international waters because the June 5th bulletin stated that the boat had crossed through the Panama Canal and a Coast Guard helicopter spotted the *MIR* outside U.S. territory the day before the arrest. Moreover, customs officials need only be reasonably certain that the border was crossed; actual observation of the crossing is not required. *Til-*

---

**1.** Coast Guard personnel are deemed "officers of the customs" under 19 U.S.C. § 1401(i).

**2.** The government apparently concedes that the stop of the *MIR* was without reasonable suspicion. No attempt was made to show that the

officials who issued the bulletin notifying Coast Guard of the *MIR*'s drug activities had a reasonable suspicion on which to base those allegations.

*ton*, 534 F.2d at 1366; *United States v. Stanley*, 545 F.2d 661, 666 n. 6 (9th Cir. 1976).

■ The only fact that distinguishes this case from *Solmes* and *Tilton* is that the *MIR* had not yet made port. The Coast Guard boarded the *MIR* approximately one-quarter of a mile inside the boundary for U.S. territorial waters.[3] Most cases which find a functional equivalent of the border have involved a permanent port of call or location such as a dock. *Tilton*, 534 F.2d at 1365; *Solmes*, 527 F.2d at 1372. *Cf. Almeida-Sanchez*, 413 U.S. at 272–73, 93 S.Ct. at 2539 (a customs search of arriving international flights at an inland airport would be the functional equivalent of a border search; "an established station near the border, at a point marking the confluence of two or more roads that extend from the border, might be functional equivalents of border searches"). *Accord United States v. One 1980 Mercedes Benz 500 SE*, 772 F.2d 602, 605 (9th Cir.1985); *United States v. Potter*, 552 F.2d 901, 907 (9th Cir.1977). If the border search can be conducted on the exact sea border or at the dock, a search in U.S. territorial waters of a vessel arriving from international waters is no more offensive to the fourth amendment.[4] Accordingly, we hold that the Coast Guard's stop of the *MIR* was constitutional because the stop occurred at the functional equivalent of a border, and was supported by a firm belief that the *MIR* had come from international waters.

### B

■ Alternatively, we find that 19 U.S.C. § 1581(a) also authorizes a warrant-less, suspicionless stop for the limited purpose of inspecting a vessel's documentation. *United States v. Cilley*, 778 F.2d 1411, 1414 (9th Cir. Dec. 20, 1985) (no fourth amendment violation when stop for document inspection on the high seas "conducted without a warrant, without probable cause and without an administrative plan limiting the discretion of the Coast Guard officers"). The test for determining whether a suspicionless stop of a vessel is reasonable under the fourth amendment calls for balancing the government's interest in enforcing compliance with documentation and safety laws against the intrusion on the individual's right to be free from unreasonable searches and seizures. *United States v. Watson*, 678 F.2d 765, 767–68 (9th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982).

In *United States v. Villamonte-Marquez*, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983) the Supreme Court concluded that a warrantless and suspicionless stop of a vessel pursuant to 19 U.S.C. § 1581(a) was reasonable under the fourth amendment, even in the absence of an administrative plan limiting the discretion of the boarding officers. "The nature of the governmental interest in assuring compliance with documentation requirements, particulary in waters where the need to deter or apprehend smugglers is great, is substantial; the type of intrusion made in this case, while not minimal, is limited." *Id.* at 593, 103 S.Ct. at 2582. Nothing in the facts of this case compels us to strike a different fourth amendment balance than

---

**3.** Customs waters extend twelve miles from the coast. 19 U.S.C. § 1401(j). United States territorial waters include all harbors, bays, and a three-mile strip of ocean extending from the coast line. *Tilton*, 534 F.2d at 1364 n. 1 (citing *Cunard Steamship Co. v. Mellon*, 262 U.S. 100, 122, 43 S.Ct. 504, 507, 67 L.Ed. 894 (1923)). The international border is thus three miles from the coast of the United States. *Id.*

**4.** In *United States v. Humphrey*, 759 F.2d 743, 746 n. 3 (9th Cir.1985), we suggested that a search of a vessel in a canal connecting a port with the high seas might be treated as the functional equivalent of a border search. The focus of the inquiry in such a search should be whether law enforcement officials have a "firm belief" that a border has been crossed. *Tilton*, 534 F.2d at 1365–67; *see also United States v. Driscoll*, 632 F.2d 737, 739 (9th Cir.1980); *Solmes*, 527 F.2d at 1372. Once law enforcement officials are reasonably certain a border has been crossed by a vessel sailing from international waters, the fact that the vessel is searched in territorial waters rather than dockside is irrelevant.

the Supreme Court did in *Villamonte-Marquez.*[5]

AFFIRMED.

---

**5.** Defendant argues that *United States v. Piner,* 608 F.2d 358 (9th Cir.1979) should control the outcome of this case. In *Piner* the Coast Guard cutter randomly stopped a sailboat at night. We held that the stop violated the fourth amendment because there was no administrative plan mandating the stop and the fact that the stop occured at night meant there was a significant intrusion on defendant's privacy interests. *Pi-* *ner,* 608 F.2d at 361. Whether our decision in *Piner* survives *Villamonte-Marquez* is an open question. A *nighttime* stop made in the absence of an administrative plan may be sufficiently more intrusive to require a different result under the fourth amendment. In this case, the *MIR* was intercepted at 5:07 P.M. so the intrusion was no greater than at any other hour of the day.