**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth Carl TROISE, Pedro Iguaran,
Tracy Lee Maudlin, John Linn
Jeppesen, Defendants-Appellants.**

Civ. A. Nos. 84–5171, 84–5175,
84–5219 and 84–5220.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1986.

Decided Aug. 7, 1986.

Nora M. Manella, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Meir Westreich, Santa Ana, Cal., Philip Deitch, Los Angeles, Cal., Terry Amdur, Pasadena, Cal., John E. Lindgren, Santa Ana, Cal., for defendants-appellants.

Before WALLACE, FARRIS and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Kenneth Troise, Pedro Iguaran, Tracy Maudlin and John Jeppesen appeal their convictions, following a court trial on stipulated facts, for importation of and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 952(a), 960(a), 841(a)(1). We affirm.

## I. *Boarding of the FLEETSPOINT by the Coast Guard*

■ Defendants first object to the boarding and inspection by the Coast Guard of their ship, the FLEETSPOINT. The boarding and inspection were proper.

Our cases make clear that the daytime boarding of a vessel on the high seas for the purpose of conducting a document and safety inspection does not violate the fourth amendment even though the boarding was conducted without a warrant or probable cause. *E.g., United States v. Cilley,* 785 F.2d 651, 653 (9th Cir.1985); *United States v. Humphrey,* 759 F.2d 743, 746 (9th Cir.1985).

Defendants argue that the boarding here was not conducted pursuant to an administrative plan that sufficiently limited Coast Guard officers' discretion concerning which vessels to board and inspect. They rely on our decision in *United States v. Piner,* 608 F.2d 358 (9th Cir.1979). Their reliance is misplaced.

First, the boarding here was conducted pursuant to an order requiring inspection of all vessels of the size of the FLEETSPOINT. Moreover, we have held that an administrative plan limiting officer discretion is no longer needed to validate a document and safety inspection by the Coast Guard. *E.g., United States v. Throckmor-*

*ton,* 784 F.2d 1003, 1005 (9th Cir.1986); *Cilley,* 785 F.2d at 653. Our decision in *Piner* has been substantially eroded following the U.S. Supreme Court decision in *United States v. Villamonte-Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983). *See United States v. Dobson,* 781 F.2d 1374, 1378 n. 5 (9th Cir.1986).

■ Nor was the boarding invalidated because Coast Guard officers suspected criminal activity. Since our decision in *United States v. Watson,* 678 F.2d 765 (9th Cir.), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982), we have consistently rejected this "pretext" argument where a stop and search had an independent administrative justification. *Id.* at 769–71; *see also United States v. Eagon,* 707 F.2d 362, 365 (9th Cir.1982), *cert. denied,* 464 U.S. 992, 104 S.Ct. 483, 78 L.Ed.2d 680 (1983). A documents and safety inspection by the Coast Guard furthers important governmental interests and constitutes an independent administrative justification for stops and searches on the high seas. *E.g., Cilley,* 785 F.2d at 645 (citing cases).

■ The fact that the Coast Guard and the Customs Service exchanged information that led to the initial boarding does not invalidate the Coast Guard's action. It is generally permissible for different law enforcement agencies to cooperate to ensure obedience to the law. Our recent decision in *Dobson* makes clear that cooperation between the Coast Guard and Customs of the sort involved here is proper. In *Dobson,* the Coast Guard boarded a vessel ladened with marijuana after a Customs advisory on the boat was issued. As in this case, the vessel in *Dobson* had been placed on a Category 3 lookout list by the Coast Guard. *See Dobson,* 781 F.2d at 1375. The record here indicates that the Coast Guard had full control of and authority over the boarding and search. The Coast Guard officers accordingly acted within their statutory authority when they boarded the FLEETSPOINT and cannot be

viewed as mere agents of the Customs Service.

■ Finally, defendants argue that the Coast Guard actually and improperly seized their vessel, so that the fruits of the seizure must be suppressed. They point to the fact that the boarding and search lasted some 2.5 hours, during which time they were not free to leave. This is a considerably longer period of detention than the warrantless detention of luggage disapproved in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), upon which defendants rely.

We find *Place* inapposite, however. Although a 2.5–hour warrantless detention may sometimes exceed permissible limits, the district court here found that Coast Guard officers detained the FLEETSPOINT and defendants no longer than was necessary to complete their inspection. This finding is supported by the record.

■■ Its duration being reasonable, we conclude that the boarding did not constitute a seizure for purposes of the fourth amendment. Officers never arrested the crew, transferred the crew onto the Coast Guard vessel or transferred Coast Guard personnel onto the FLEETSPOINT for the continuation of the ship's journey. The vessel was never taken under tow. Indeed, the FLEETSPOINT proceeded to its planned destination free and unimpaired once the Coast Guard inspection was completed. The Coast Guard thus followed none of the procedures that it normally employs when it seizes a vessel. In light of all these circumstances, no seizure occurred. Radar surveillance of the FLEETSPOINT from the end of the inspection until it reached port in San Pedro is also not a seizure. The *Place* doctrine simply does not apply.

## II. *The Customs Search*

Defendants next complain that the Customs' search of their vessel at the Port of Entry at San Pedro was invalid because it was conducted without a warrant and because Coast Guard personnel assisted in it. We reject the argument.

■ The Customs Service has unquestioned authority to conduct a border search of any vessel or baggage; the search is "reasonable" within the meaning of the fourth amendment simply because the vessel or item is entering the country from outside. *United States v. Ramsey*, 431 U.S. 606, 619, 97 S.Ct. 1972, 1980, 52 L.Ed.2d 617 (1977); *United States v. Most*, 789 F.2d 1411, 1414 (9th Cir.1986); 19 U.S.C. § 1581. These searches need not be based on a warrant or probable cause, or even on mere suspicion. *Most*, 789 F.2d at 1414; *United States v. Dobson*, 781 F.2d 1374, 1376 (9th Cir.1986).

■ Nor does any warrant requirement attach merely because Customs had been informed by the Coast Guard that there was probable cause to believe the ship contained contraband. Customs often has reliable advance information that someone is bringing contraband into the country; that fact does not give rise to a requirement of a warrant for a border search.

■ Finally, Coast Guard assistance with the border search was proper. Just as the Coast Guard retained full control of the boarding on the high seas, so the Customs Service retained control of the operation at San Pedro harbor. Moreover, defendants did not report to the Port of Entry on their own. The Coast Guard was available to assist defendants to a Customs dock where the border search could be completed.

## III. *Suppression of Pre-Arrest Statements*

Finally, defendants argue that statements they made during the Coast Guard and Customs searches before their arrest should be suppressed because defendants had not been advised of their *Miranda* rights. They concede that they were read their rights immediately upon being placed under arrest, but they argue that there was probable cause for their arrest at an earlier time, and that warnings should have been given then.

Miranda warnings are generally required only for custodial interrogation. *E.g., Beckwith v. United States,* 425 U.S. 341, 346–47, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976). Routine questioning by the Coast Guard or Customs officials is not the sort of custodial situation that normally triggers the *Miranda* requirement. *United States v. Espericueta-Reyes,* 631 F.2d 616, 622 (9th Cir.1980); *United States v. Gray,* 659 F.2d 1296, 1301 (5th Cir.1981). We have held, however, that once Customs agents have probable cause to believe that the person they are questioning committed an offense, and that person reasonably believes that he is not free to leave, *Miranda* warnings should be administered. *United States v. Estrada-Lucas,* 651 F.2d 1261, 1265 (9th Cir.1980).

 Defendants contend that the Coast Guard acquired probable cause shortly after its officers boarded the FLEETSPOINT and that Customs agents had probable cause throughout their inspection. Assuming, without deciding, the existence of probable cause by both the Coast Guard and Customs agents, we conclude that any *Miranda* violation that may have occurred here was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This case was tried on stipulated facts that included pre-arrest statements that were allegedly obtained improperly. The statements indicate some contradictions on defendants' part, but they have only a peripheral relation to the crimes charged. In light of all the evidence, the error, if any, in failing to express these statements was harmless beyond a reasonable doubt.

### CONCLUSION

The inspection by the Coast Guard and Customs Service did not violate defendants' fourth amendment rights. Any violation of defendants' *Miranda* rights that may have occurred was harmless beyond a reasonable doubt. The convictions are AFFIRMED.