UNITED STATES of America,
Plaintiff–Appellee,

v.

Salvador SANDOVAL VARGAS,
Defendant–Appellant.

No. 87–5179.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1987.

Decided April 27, 1988.

As Amended Aug. 8, 1988.

Larry N. Ainbinder, Federal Defenders, San Diego, San Diego, Cal., for defendant-appellant.

Patrick O'Toole, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BROWNING, HUG and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

On February 26, 1987, Sandoval Vargas was charged with importing into the United States and possessing with intent to distribute approximately 25 kilograms of marijuana. Sandoval Vargas moved to suppress the marijuana, which was recovered through a border search of his car. The district court denied the motion. Sandoval Vargas then entered a conditional plea of guilty to the importation charge, pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. The parties stipulated to the facts surrounding the border search. The plea was accepted and the possession charge was dismissed. Sandoval Vargas appealed his conviction, challenging the validity of the border search. The sole question before us is whether individualized or reasonable suspicion is required—by Constitution, statute, or both—before a vehicle may be searched at the border.

With regard to the facts of the search of Sandoval Vargas' car, the complete stipulation of the parties is as follows:

On February 15, 1987, at about 2:25 p.m., defendant Sandoval drove a gray 1973 Volkswagon from Mexico into the United States at the port of entry in Tecate, California. At primary inspection, Customs Inspector Edwin D. Sutehall randomly referred eight vehicles, including defendant Sandoval's, to secondary inspection to be searched. At this time, there was no probable cause or individualized reasonable suspicion to search the vehicle. At secondary inspection, Customs inspectors conducted a border search of defendant Sandoval's vehicle and found approximately 25 kilograms of marijuana hidden in it.

### Constitutional Issue

Sandoval Vargas contends first that the search of his car violates the fourth amendment. Specifically, he argues that a random border search that lacks individualized reasonable suspicion fails to satisfy the fourth amendment's reasonableness requirement. The government asserts that the Constitution does not require individualized or reasonable suspicion for a search at the border. We agree with the government.

In *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977),

the Supreme Court stated explicitly that border searches constitute a special category under the fourth amendment. The Court reviewed the history of judicial treatment of border searches and declared: "That searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border, should, by now, require no extended demonstration." *Id.* at 616, 107 S.Ct. at 1978. The Court expressly reaffirmed the historical view that border searches are reasonable within the meaning of the fourth amendment "by the single fact that the person or item in question had entered into our country from outside." *Id.* at 619, 107 S.Ct. at 1980.

That view was restated by the Supreme Court in 1985. *United States v. Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), involved the extended detention and non-routine search of a "balloon smuggler" at the Los Angeles airport. The Court held that reasonable suspicion is required for the detention of a traveler at the border "beyond the scope of a routine customs search and inspection." *Id.* at 541, 105 S.Ct. at 3310. However, the Court also noted: "Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Id.* at 538, 105 S.Ct. at 3309 (footnote omitted).[1]

Our knowledge of the circumstances surrounding the border search of Sandoval Vargas' car is limited, but so far as we know from the stipulation, there is nothing about the search in this case that takes it out of the realm of routine border searches. Sandoval Vargas was clearly at the port of entry from Mexico. The stipulation does not indicate any extended period of detention or any unusual, offensive, or intrusive search of the defendant's person. There was merely a vehicle search by customs inspectors, typical of those conducted at the border. The fact that the search occurred at a secondary inspection point is not sufficient, in itself, to render this a non-routine search. *Klein v. United States,* 472 F.2d 847, 849 (9th Cir.1973).[2] Nor is the fact that not all cars were searched, but only a randomly selected number. The law is clear that a border search of a vehicle in these circumstances is per se reasonable within the meaning of the fourth amendment. There was no constitutional violation.

### Statutory Issue

Alternatively, Sandoval Vargas argues that a border search of a vehicle without individualized reasonable suspicion violates federal statutory standards. He points to 19 U.S.C. § 482 (1982), which on its face requires suspicion for a customs search, and contends that that statute governs border searches. The government argues that 19 U.S.C. § 1581 (1982), which does not include an express suspicion requirement,

---

1. Our court has also reiterated this principle in numerous cases. For example, in *United States v. Dobson,* 781 F.2d 1374 (9th Cir.1986), a defendant charged with a marijuana offense moved to suppress evidence on the ground that the Coast Guard's stop of his sailboat without suspicion was an unreasonable search and seizure under the fourth amendment. The government conceded that the stop was without reasonable suspicion. *Id.* at 1376 n. 2. We determined that the stop occurred at the functional equivalent of the border, *id.* at 1377, and accordingly held the stop constitutional, declaring: "A border search is by its very nature reasonable under the fourth amendment, and requires neither a warrant, probable cause, nor even articulable suspicion." *Id.* at 1376; *see also United States v. Troise,* 796 F.2d 310, 313 (9th Cir.1986) (border searches are reasonable with-

in the meaning of the fourth amendment "simply because the vessel or item is entering the country from outside"); *United States v. Most,* 789 F.2d 1411, 1414 (9th Cir.1986) (border searches "are considered reasonable under the Fourth Amendment simply by virtue of the fact that they occur at the border"); *United States v. Alfonso,* 759 F.2d 728, 733–34 (9th Cir.1985) (border searches are by definition reasonable under the fourth amendment).

2. In *Klein,* we rejected the defendant's argument that suspicion must be aroused by the border interview in order to justify a search in a secondary area. We held that a border search conducted at both primary and secondary areas "was one event, not two separate and distinct searches." 472 F.2d at 849.

applies to border searches, and that section 482 does not.[3] This is a more difficult question to resolve, because the law with respect to the effect of these statutes on border searches is at best confused—and confusing. However, we conclude, for the reasons explained below, that the two statutes do not impose any additional limitations on routine border searches of vehicles beyond those prescribed by the Constitution.

Section 482 provides:

Any of the officers or persons authorized to board or search vessels may stop, search, and examine ... any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law ... and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law.

19 U.S.C. § 482 (1982). Section 1581 provides:

Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States ... and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

19 U.S.C. § 1581(a) (1982).[4] These provisions were both enacted as part of an 1866 customs statute. Act to Prevent Smuggling, ch. 201, §§ 2–3, 14 Stat. 178, 178 (1866).[5] Section 1581 originally referred only to vessels. 14 Stat. at 178. Thus it appears that section 1581 (section 2 of the 1866 statute) was designed to give customs officials power to search vessels, and section 482 (section 3 of the statute) was intended to give those same officials authority to conduct land searches of persons, vehicles, and mail.[6] While the power to search vessels was clearly intended to be plenary, it is less clear what, if any, restrictions section 482 placed on border and mail searches.

In 1922, section 1581 was amended to add the reference to vehicles. Tariff Act of 1922, ch. 356, § 581, 42 Stat. 858, 979. The amendment created a potential conflict between sections 1581 and 482, because section 482 appears on its face to require

---

**3.** The government also relies, in part, on 19 U.S.C. § 1582 (1982). That section provides for the promulgation of regulations "for the search of persons and baggage" to which "all persons coming into the United States from foreign countries" will be subject. Section 1582 has been cited by several courts as a statutory basis for permitting border and mail searches in the absence of any particularized suspicion. *See* notes 11, 13 *infra.* However, it does not mention vehicles. Because both section 482 and section 1581 apply expressly to vehicles, we see no need to further complicate the analysis in this case by considering a third statute that merely authorizes the issuance of regulations and does not even mention vehicles. In any event, because section 1582, like section 1581, does not include any language regarding suspicion, the standard under either section would be the same. We therefore restrict our analysis to the following questions: are vehicle searches at the border governed by section 482, section 1581, or both; and if so, what level of suspicion does that statute (or statutes) require.

**4.** The Supreme Court has held section 1581 constitutional insofar as it authorizes the boarding of a vessel in waters that provide ready access to the open sea for the limited purpose of inspecting documents. *United States v. Villamonte-Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed. 2d 22 (1983). However, lower courts have limited section 1581's broad grant of authority to conduct searches without cause to border searches, because otherwise the statute's unlimited search authority would conflict with the requirements of the fourth amendment. *See, e.g., United States v. D'Antignac,* 628 F.2d 428, 433 (5th Cir.1980) (to be constitutional, a section 1581 search must be either a border search or a limited investigatory stop based on reasonable suspicion), *cert. denied,* 450 U.S. 967, 101 S.Ct. 1485, 67 L.Ed.2d 617 (1981).

**5.** The first statute authorizing customs searches was enacted in 1789. Act of July 31, 1789, ch. 5, 1 Stat. 29.

**6.** Section 482 also appears to authorize searches of luggage and other articles accompanying a traveler by land, as well as searches of trunks and other material shipped into the country. *See* note 18 *infra.*

some degree of suspicion for a border search of a vehicle while section 1581 appears not to. *See United States v. Most,* 789 F.2d 1411, 1415 (9th Cir.1986) (noting apparent statutory conflict). In order to reconcile this seeming conflict, we will first attempt to bring some order to the cases in which we have applied these two statutes.

In *DeVries v. Acree,* 565 F.2d 577 (9th Cir.1977), we held that a search of first class letters from abroad must meet the "reasonable cause to suspect" standard contained in the latter portion of section 482. *DeVries* was decided shortly after the Supreme Court's 1977 decision in *Ramsey,* which held that section 482 authorizes customs searches of incoming international mail. 431 U.S. at 612–13, 97 S.Ct. at 1976–77.[7] In *DeVries,* we rejected the argument that section 482 permits mail searches to be conducted without individualized suspicion. Instead, we held that customs officials must have reasonable cause to suspect that letters contain contraband or dutiable merchandise before opening them. 565 F.2d at 579.[8] We also rejected the lower court's conclusion that the fact of entry of the letters into the United States was sufficient to supply reasonable suspicion. *Id.* at 578.

With regard to traditional border searches our precedent is somewhat less clear, at least as to which statute is applicable. In a 1979 case, *United States v. Soto-Soto,* 598 F.2d 545 (9th Cir.1979), we declared that section 482 "sets forth the requirements imposed by Congress for a valid border search." *Id.* at 548. We held that the search at issue—a border search of the defendant's car—failed to meet at least two of section 482's criteria: the search was conducted by an FBI agent rather than a customs official, and it was conducted for general law enforcement purposes (specifically to locate stolen vehicles) rather than to enforce customs laws. *Id.* at 549. Because the FBI agent had no authority to conduct a border search without warrant, consent, or probable cause, and because the search would have been illegal away from the border, we held the search invalid. *Id.*

■ The unspoken premise of *Soto-Soto,* a premise which we now expressly endorse, is as follows: Sections 482 and 1581 represent special delegations of authority to customs officials to conduct border searches. That authority has also been extended to immigration and Coast Guard officials. *United States v. Thompson,* 475 F.2d 1359, 1361–63 (5th Cir.1973) (Border Patrol is authorized to conduct border searches); *United States v. Whiting,* 781 F.2d 692, 696 (9th Cir.1986) (this court has upheld warrantless border searches conducted by Customs Service, Border Patrol, and Coast Guard); *Soto-Soto,* 598 F.2d at 549 (unlike customs or immigration officer, FBI agent has no delegation of authority under section 482). However, Congress has given the authority to conduct border searches *only* to this limited group of officials, and has charged them with the exclusive responsibility for inspecting goods and persons crossing the borders and for interdicting illegal entries. Searches conducted by other law enforcement agents are not considered border searches, *Soto-Soto,* 598 F.2d at 549, and must therefore meet the traditional demands of the fourth amendment.[9]

7. The *Ramsey* Court declined to address the statutory questions we face here. Because the search at issue in *Ramsey* met the "reasonable cause to suspect" standard, the Court did not need to decide "whether Congress conceived [section 482] as a necessary precondition to the validity of the search or whether it was viewed, instead, as a limitation on otherwise existing authority of the Executive." 431 U.S. at 615, 97 S.Ct. at 1978. The Court also was not required to decide whether the search would have been authorized by another statute if reasonable suspicion had been lacking. *Id.* at 615 n. 10, 97 S.Ct. at 1978 n. 10.

8. We relied on the part of section 482 that provides "and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law." The earlier part of the statute, which is applicable to traditional border searches, requires only that the customs officials "suspect" wrongdoing.

9. In discussing sections 482 and 1581, we have explained:

In conferring upon Customs officers such broad authority, circumscribed only by Constitutional limitations of the Fourth Amendment, the Congress has in effect declared that

Some of our more recent cases have followed *Soto–Soto* in treating section 482 as the primary authorization for border searches. *Whiting*, 781 F.2d at 696 n. 9 (search of outgoing international mail); *United States v. Alfonso*, 759 F.2d 728, 733 (9th Cir.1985) (extended border search of cabin aboard vessel). Others of our cases have cited section 1581 as the appropriate basis. *United States v. Troise*, 796 F.2d 310, 313 (9th Cir.1986) (search of vessel); *United States v. Dobson*, 781 F.2d 1374, 1377 (9th Cir.1986) (stop and inspection of vessel). Some cases have cited both statutes. *Alfonso*, 759 F.2d at 733 n. 1; *Klein*, 472 F.2d at 849 (search of vehicle). At least one recent case noted that there appeared to be a conflict between the two statutes, but declined to resolve it. *Most*, 789 F.2d at 1415 (search of package sent through mail). The confusion is in some respects understandable. The statutory scheme is not entirely clear. Section 1581 applies expressly to vessels, and is generally (although not exclusively) appropriate for use in vessel search cases. Section 482 seems to encompass all border searches on land and applies expressly to mail. How-

ever, because both statutes also apply expressly to vehicles, the land/sea distinction is incomplete.[10] As a result, courts have had some difficulty determining which statute and which line of precedent should be applied in particular cases—although the uncertainty has not been limited to vehicle searches. *See Most*, 789 F.2d at 1415.[11]

Significantly, however, in none of our traditional border search (as opposed to mail search) cases has the result turned on which, if any, statute was cited. Rather, the opinions discuss the constitutional and statutory authorizations for border searches in the same breath, without any indication that the standards vary. *See, e.g., Troise*, 796 F.2d at 313; *Alfonso*, 759 F.2d at 733–34. In some cases we have not reached the question of what level of suspicion the statutes require, because reasonable suspicion was present in any event or was required for some other reason. *Alfonso*, 759 F.2d at 734 (reasonable suspicion required for extended border search). In some cases, we have upheld suspicionless searches. *Klein*, 472 F.2d at 849; *see*

a search which would be "unreasonable" within the meaning of the Fourth Amendment, if conducted by police officers in the ordinary case, would be a reasonable search if conducted by Customs officials in lawful pursuit of unlawful imports. Judicial recognition of this distinction has given rise to the term "border search", in order to distinguish official searches which are reasonable because made solely in the enforcement of Customs laws from other official searches made in connection with general law enforcement. *Alexander v. United States*, 362 F.2d 379, 381–82 (9th Cir.), *cert. denied*, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966). The search in *Soto–Soto* was not a valid border search because it was not conducted by an official or for a purpose authorized by the statute. The mere fact that the search occurred at the border was not enough to justify dispensing with the normal fourth amendment requirements. *Soto–Soto*, 598 F.2d at 549.

**10.** As previously noted, section 1582 (section 1 of the 1866 statute) further complicates the situation by authorizing regulations governing border searches of "persons and baggage." On its face section 1582 seems to apply to both land and sea searches, but it does not mention vessels, vehicles, or mail. In any event, for the reasons already mentioned, this section is not a factor in our analysis. *See* note 3 *supra.*

**11.** The case law from other circuits offers us little help. The Fourth Circuit has applied section 482 to an "extended border search" at a railroad station in Baltimore and required reasonable suspicion. *United States v. Bilir*, 592 F.2d 735 (4th Cir.1979). The First, Fifth, and Seventh Circuits have held that section 1582, along with or in place of section 482, authorizes mail searches without suspicion. *United States v. Pringle*, 576 F.2d 1114 (5th Cir.1978); *United States v. Odland*, 502 F.2d 148 (7th Cir.), *cert. denied*, 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974); *see also United States v. Emery*, 541 F.2d 887 (1st Cir.1976) (citing *Odland*). The Seventh Circuit, like the Fourth Circuit, has implied that section 482 may govern customs searches away from the border and that the "reasonable cause to suspect" requirement may then be a limitation on customs officials' powers. *Odland*, 502 F.2d at 150. The Eighth Circuit has cited both sections 482 and 1582 in a border search case without indicating whether the statutory standards differ from one another or from the constitutional standard. *United States v. Oyekan*, 786 F.2d 832 (8th Cir.1986). Other examples of conflicting treatment abound. *See, e.g.,* note 13 *infra* (discussing rule in Third Circuit).

*also Troise,* 796 F.2d at 313 (unclear what level of suspicion customs officials had). Thus despite the perceived statutory conflict between sections 482 and 1581, and regardless of which statute we apply, our cases have not held that either statute imposes a suspicion requirement on traditional border searches beyond that mandated by the Constitution.[12]

With these prior decisions in mind, we turn to the issues raised in the case before us. We first conclude that the defendant is correct in asserting that section 482 governs searches of vehicles at the border.[13] Our prior case law requires that result: *Soto–Soto* states clearly that routine border searches of vehicles, such as the search of Sandoval Vargas' car, must meet the requirements of section 482. 598 F.2d at 548–49. That decision remains binding.[14]

We must still, however, determine how to interpret section 482's suspicion requirement. That issue was not addressed in *Soto–Soto.* In that case, the district court held that the stop of the defendant's car was without "founded suspicion," and we agreed. 598 F.2d at 546–47. However, we discussed the question only in the context of the requirements of California's vehicle inspection statute. *See id.* Because we found that the search in *Soto–Soto* was not authorized by section 482, *see* discussion at

pages 1136–37 *supra,* we did not reach the question whether section 482's suspicion requirement was met. Nor have our other border search cases helped to clarify this issue.

■ We now reject the argument that section 482 imposes a reasonable suspicion requirement on routine vehicle searches at the border. On its face, section 482 requires mere suspicion for a search of a "vehicle, beast, or person" and "reasonable cause to suspect" for a search of a "trunk or envelope." The distinction between the "vehicle, beast, or person" category and the "trunk or envelope" category raises some difficult legal questions to which courts have not yet provided definitive answers. Nevertheless, the language of the statute strongly supports the view that section 482 requires only subjective suspicion—not individualized reasonable suspicion—for a routine border search of a vehicle. *See United States v. Sandler,* 644 F.2d 1163, 1169 (5th Cir.1981) (en banc) ("We do not read 19 U.S.C. § 482 as requiring any suspicion other than the subjective response of a customs official who considers that the circumstances make such a search appropriate."); *Maguire v. United States,* 396 F.2d 327, 330 (9th Cir.1968) ("mere suspicion" sufficient for search of vehicle under section 482), *cert. denied,* 393

---

**12.** In only one case—*DeVries*—have we overturned a search on the ground that it did not meet the "reasonable cause to suspect" standard set forth in the latter part of section 482. However, *DeVries* was a mail search rather than a traditional border search case. *See* discussion at pages 1139–40 *infra.*

**13.** We observe that the Third Circuit, the only other circuit to have directly confronted this issue, adopted an opposite approach. In *United States v. Glasser,* 750 F.2d 1197 (3d Cir.1984), *cert. denied,* 471 U.S. 1018, 105 S.Ct. 2025, 85 L.Ed.2d 306 (1985), that court held that the search at issue was authorized by section 1582. *Id.* at 1204. The court also held that section 1582 implements section 1581 and that section 1581 is the general border search statute, while section 482 is a specialized provision that governs searches for smuggled goods already in the United States. *Id.* Thus under the Third Circuit's interpretation, section 482 applies to domestic searches for smuggled goods but not to border searches. We find the *Glasser* approach

unpersuasive and contrary to the clear statutory language; it also seems contrary to the analysis followed by most other circuits, *see* note 11 *supra.* In any event, this approach is foreclosed to us by our holding in *Soto–Soto.*

**14.** We recognize, however, that there is also merit to the government's argument that section 1581 applies to border searches of vehicles. An earlier decision of ours involving a vehicle search cited both section 482 and section 1581. *Klein,* 472 F.2d at 849. We do not believe the addition of "vehicles" to section 1581 was intended to repeal by implication that part of section 482 that expressly applies to vehicles; nor do we think that Congress intended to enact conflicting statutes. As we explain below, we believe the most appropriate solution is to harmonize the two statutes by reading them to impose the same standard on border searches of vehicles. We also believe this approach is most consistent with our prior treatment of border searches.

U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969).[15]

In interpreting section 482's suspicion requirement as it applies to searches of vehicles, we are bound to consider the Supreme Court's pronouncements regarding the unique function and status of border searches. The Court has repeatedly emphasized the sovereign's right to protect itself against the importation of smuggled or prohibited goods by conducting routine searches of people, vehicles, and luggage at the border. *See Ramsey,* 431 U.S. at 617–19, 97 S.Ct. at 1979–80 (discussing prior cases). The customs search statutes were designed to implement that right by giving special powers to customs officials at the border, beyond those exercised by ordinary law enforcement agents. Most recently, in *Montoya de Hernandez,* the Supreme Court declared again that the rules governing border searches rest on different considerations from those governing domestic searches, and stressed the courts' "longstanding concern for the protection of the integrity of the border." 473 U.S. at 537–38, 105 S.Ct. at 3308–09.[16] Based on these special considerations, the courts have long recognized the plenary power of the Customs Service to conduct routine searches at the border, and have upheld that power against constitutional challenges. *See, e.g., Ramsey,* 431 U.S. at 619, 97 S.Ct. at 1980; *Dobson,* 781 F.2d at 1376.

The Supreme Court has not had occasion to apply section 482 to a border search. However, we do not believe that we can now interpret that statute so as to restrict the authority of customs officials to conduct routine border searches without a warrant, probable cause, or even articulable suspicion. *See Troise,* 796 F.2d at 313. We conclude, therefore, that section 482 requires only subjective suspicion for a border search of a person or vehicle, and that that requirement is satisfied whenever the person or vehicle being searched has just entered the United States from outside.[17] In other words, no particularized or individualized suspicion is required for a vehicle search at the border; the fact of entry is sufficient, in itself, to create subjective suspicion within the meaning of section 482. We believe this interpretation is consistent with the border search doctrine of the Supreme Court and this circuit. We conclude that the search of Sandoval Vargas' car, because it was conducted by a customs official at the port of entry from Mexico, met the requirements of section 482.

■ As previously noted, the only case in which we have overturned a customs

---

**15.** The border searches conducted under section 482—that is, searches conducted at the land border or its equivalent by customs and immigration officials—can be distinguished from two other types of searches. As we have noted, searches conducted at the border or its equivalent by other law enforcement agents are not authorized by section 482 and must meet ordinary constitutional requirements. *Soto–Soto,* 598 F.2d at 549; *see* discussion at pages 1136–37 *supra.* Searches conducted away from the border by customs and immigration officials must also respect the traditional limitations imposed by the fourth amendment. The fact that section 482 requires only subjective suspicion for a vehicle search at the border does not justify such a search away from the border, where the special constitutional status of border searches is no longer relevant. *See, e.g., Almeida–Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) (away from border, vehicle search by roving immigration patrol must meet probable cause requirement of fourth amendment).

**16.** We note that in the course of the Court's discussion in *Montoya de Hernandez,* it cited sections 482 and 1582 as well as the fourth amendment. *See* 473 U.S. at 539, 105 S.Ct. at 3309. Thus, although the case was decided on constitutional grounds, the Court's emphasis on the need to safeguard the integrity of our national borders was made in a statutory as well as a constitutional context.

**17.** A border search of a person or vehicle includes a search of any suitcases, packages, or other articles accompanying the person or contained within the vehicle. *See Montoya de Hernandez,* 473 U.S. at 538, 105 S.Ct. at 3309 (referring to routine searches of persons and effects of entrants); *Ramsey,* 431 U.S. at 618–19, 97 S.Ct. at 1979–80 (discussing power of customs officials to search persons, luggage, and packages at borders); *Alexander,* 362 F.2d at 380 (upholding border search of toolbox inside locked trunk of vehicle).

search on the ground that it did not meet the requirements of section 482 was *DeVries*. That case involved, not a border search of a vehicle, but a search of incoming international mail. The courts have held that mail searches and traditional border searches are indistinguishable for *constitutional* purposes. *Ramsey*, 431 U.S. at 620, 97 S.Ct. at 1980; *United States v. Barclift*, 514 F.2d 1073, 1074 (9th Cir.), *cert. denied*, 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 63 (1975). But as pointed out above, the statutory standard applicable to mail—"reasonable cause to suspect"—appears on its face to be stricter than the subjective suspicion standard applicable to vehicles. *DeVries* held that the standard for mail is in fact stricter and that section 482 imposes a reasonable suspicion requirement in mail search cases; we have no cause to question that decision.[18] Based on the holding in *DeVries*, we conclude that the statutory standards for mail searches and traditional border searches are different.[19] *But see United States v. Doe*, 472 F.2d 982, 985 (2d Cir.) (there is "no justification for a construction of [section 482] that would give customs agents less leeway in preventing inportation of mailed contraband than when such merchandise is imported in person"), *cert. denied*, 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973).

*Conclusion*

■ Because our construction of section 482 harmonizes it with section 1581 with regard to vehicle searches at the border, and because we conclude that no individualized or reasonable suspicion is required for routine vehicle searches under either statute, it does not matter from a practical standpoint which statute we apply. If there is any conflict in our case law as to which statute governs border searches of vehicles, the conflict is of no consequence and we see no purpose in convening an en banc court to resolve it. We conclude that section 482 governs searches at the land border. We read section 482 to require only subjective suspicion for a routine border search of a vehicle, and we hold that such suspicion is readily supplied by the fact that the vehicle has entered the country from outside. We need not decide whether section 1581 also governs border searches of vehicles, because section 1581 would not require anything different. This approach is fully consistent with our court's prior treatment of border searches, as well as with the provisions of section 1581.

The border search of Sandoval Vargas' car did not violate constitutional or statutory standards. The judgment of conviction is

AFFIRMED.

---

18. We note that the "reasonable cause to suspect" language of section 482 applies to searches of trunks as well as envelopes. The rationale of *DeVries* may therefore extend beyond letters to include all items that are mailed or shipped into this country. On the other hand, it seems reasonable to assume that searches of trunks that accompany a traveler crossing a border would be subject to the same standard—no need for individualized suspicion—that applies to searches of other luggage or packages carried by the traveler or located in his vehicle.

19. The Supreme Court declared in *Montoya de Hernandez* that "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant, and first-class mail may be opened without a warrant on *less than probable cause*." 473 U.S. at 538, 105 S.Ct. at 3309 (citing *Ramsey* ) (footnote omitted) (emphasis added). This passage also strongly suggests that the standard for mail searches may be different from that for traditional border searches.