**UNITED STATES of America, Plaintiff,**

v.

**Oanh NGUYEN, Defendant.**

**Crim. No. 88–01459 DAE 01.**

United States District Court, D. Hawaii.

Dec. 14, 1988.

mately 500 grams of methamphetamine concealed within a package marked as containing tea. The package was mailed from Taiwan on September 3, 1988 and addressed to the defendant Nguyen Robert, III N. Beretania Street, # 204, Honolulu, Hawaii. As a consequence of this discovery the defendant was subjected to a controlled delivery of the package and thereafter arrested and charged in a three count indictment with importation of, conspiracy to import and possession with the intent to distribute a controlled substance.

The defendant filed his Motion to Suppress Tangible Evidence on October 25, 1988 which came on for hearing Monday, November 21, 1988. Upon its own motion, this Court ordered the hearing continued to Tuesday, November 22, 1988 to allow the Court to consider the arguments of counsel respecting the appropriate standard required to be met by Customs officials prior to their engaging in a search of inbound package mail and, in the interest of justice, to provide the United States with additional time to prepare for the evidentiary hearing. The evidentiary hearing was held on November 22, 1988.

## II. *Decision of the Court*

■ This Court must first determine what standard is required to be met by Customs officials prior to their engaging in a search of inbound package mail. The defendant contends that, pursuant to 19 U.S.C. § 482, inbound package mail may be opened only with a search warrant or with reasonable suspicion that the package contains contraband. The United States, on the other hand, maintains that under 19 U.S.C. § 1581, as implemented by § 1582, Customs agents have the authority to search any such package without articulating a "reasonable cause to suspect." [1]

Daniel A. Bent, U.S. Atty., John F. Peyton, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff.

William F. Jenner, Jr., Honolulu, Hawaii, for defendant.

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE

EZRA, District Judge.

### I. *Background*

On September 7, 1988, the United States Customs Service, while performing routine inspections of incoming international ("inbound") package mail, discovered approxi-

### A. Requisite Legal Standard

■ "Inspection of mail from abroad is a border search for which neither a search

---

**1.** The Court notes that the defendant need not present evidence that he had a legitimate expectation of privacy in the subject package to have standing to challenge this alleged statutory violation by the Customs Service. *United States v. Soto–Soto*, 598 F.2d 545, 550 (9th Cir.1979) (expectation of privacy is "an issue relevant only to analysis of a constitutional violation").

warrant nor probable cause is required." *United States v. Most*, 789 F.2d 1411, 1414 (9th Cir.1986). "[B]order searches constitute a special category under the fourth amendment," *United States v. Sandoval–Vargas*, 854 F.2d 1132, 1134 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 270, 102 L.Ed.2d 257 (1988), and are "considered reasonable ... by virtue or the fact that they occur at the border." *Most*, 789 F.2d at 1414.[2] Hence, the Constitution standing alone permits the opening of any foreign inbound mail by Customs officials without a warrant. *Id.* However, Congress has enacted statutes prescribing the procedures and scope of border searches.

### 1. *Statutory Law*

Pursuant to 19 U.S.C. §§ 482 and 1581, Congress has granted exclusive authority to conduct border searches to Customs officials.[3] *Sandoval–Vargas*, 854 F.2d at 1136. Section 482 provides in relevant part that:

> [Any officer of the customs] may stop, search, and examine ... any vehicle, beast, or person, on which or whom he or they *shall suspect* there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law ... and to search any trunk or envelope, wherever found in which he may have *reasonable*

*cause to suspect* there is merchandise which was imported contrary to law.

19 U.S.C. § 482 (emphasis added). Section 1581 provides in part:

> Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States ... and examine, inspect, and search the vessel and vehicle and ... any person, trunk, or package, or cargo on board and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

19 U.S.C. § 1581.

An examination of the two statutes discloses that, unlike § 1581 which is void of any standard, § 482 requires that Customs officials meet a statutory suspicion standard prior to their engaging in a border search. This is particularly troublesome in view of the fact that both statutes purport to cover vehicle searches.[4]

The United States contends, citing *United States v. Glasser*, 750 F.2d 1197, 1200 (3d Cir.1984) (search of inbound package from Jamaica by Customs officials permissible without articulating reasonable cause to suspect package contained contraband), *cert. denied, Erdlen v. United States*, 471 U.S. 1018, 105 S.Ct. 2025, 85 L.Ed.2d 306 (1985), that standardless § 1581, as implemented by 19 U.S.C. § 1582,[5] is the operative general border search statute and that § 482 applies only to domestic searches for

---

**2.** "This longstanding recognition that searches at our borders without probable cause and without a warrant are nonetheless 'reasonable' has a history as old as the Fourth Amendment itself." *United States v. Ramsey*, 431 U.S. 606, 619, 97 S.Ct. 1972, 1980, 52 L.Ed.2d 617 (1977).

**3.** That authority has been extended to include Immigration and Coast Guard officials as well. *Sandoval–Vargas*, 854 F.2d at 1136.

**4.** Sections 1581 and 482 were originally enacted as part of the 1866 anti-smuggling statute. Act to Prevent Smuggling, ch. 201, §§ 2–3, 14 Stat. 178, 178 (1866). Section 1581, § 2 of the 1866 Act, granted customs officials plenary power to conduct vessel searches. Section 482, § 3 of the 1866 Act, on the other hand, was apparently "intended to give these same officials authority to conduct land searches of persons, vehicles, and mail," *Sandoval–Vargas*, 854 F.2d at 1135, where there was reason to believe contraband was being smuggled. Section 1581 was amended in 1922 to include reference to "vehicles"

thereby creating a potential conflict between the two statutes with respect to the requisite standard of suspicion that must exist prior to engaging in a border search of a vehicle by Customs officials.

Interestingly, in enacting § 2 of the 1866 Act concern was expressed about granting such "extraordinary powers of search and seizure of vessels". *See* Cong.Globe, 39th Cong., 1st Sess. 3440 (1866). "[W]e ought not to do an act which shall put it in the hands of irresponsible men at every port of the country to embarrass the commerce under the simple pretense of stopping smuggling.... These men should have some reason to believe that there is something there which warrants them in stopping the vessel." *Id.* at 3441.

**5.** Section 1582 authorizes the Secretary of the Treasury to prescribe regulations for the search of persons and baggage.

smuggled goods. The United States therefore argues that under § 1581 and other regulations authorizing border searches,[6] Customs officials may open and search any piece of inbound package mail without reasonable suspicion.

In *Sandoval–Vargas, supra,* however, the Ninth Circuit held that 19 U.S.C. § 482 governs land border searches by Customs agents, rejecting as "unpersuasive and contrary to ... clear statutory language," the Third Circuit's decision in *Glasser. Sandoval–Vargas,* 854 F.2d at 1138 n. 13. The court held that, with respect to traditional land border searches, § 482 requires mere subjective suspicion which "is satisfied whenever the person or vehicle being searched has just entered the United States from outside." *Sandoval–Vargas,* 854 F.2d at 1139.

The Court proceeded to note that although "[inbound] mail searches and traditional border searches [of persons and vehicles] are indistinguishable for *constitutional* purposes ... the statutory standards ... are different." *Id.* at 1140. Indeed, the Court reaffirmed its decision in *DeVries, supra,* that "the standard for mail is in fact stricter and that section 482 imposes a reasonable suspicion requirement in mail search cases." *Sandoval–Vargas,* 854 F.2d at 1140.

The government maintains that because *DeVries* involved a civil action challenging the opening of inbound first class letter mail, it is distinguishable from the instant case which is a criminal action involving the opening of inbound package mail. The Court in *Sandoval–Vargas,* a criminal matter, went to great lengths, however, to note that the " 'reasonable cause to suspect' language of section 482 applies to searches of trunks as well as envelopes [and therefore t]he rationale of *DeVries* may ... extend beyond letters to include all items that are mailed or shipped into this country."[7] *Sandoval–Vargas,* 854 F.2d at 1140 n. 18.[8]

### 2. Conclusion

Under the dicta of *Sandoval–Vargas,* this Court has no choice but to conclude that § 482 applies to searches of all inbound mail, packages and letters alike, thereby imposing the "reasonable suspicion" standard as a prerequisite to opening any inbound mailed article by Customs officials. Hence, for the United States to succeed in opposing the defendant's motion to suppress, it must prove by a preponderance of the evidence that the search of the subject package by Customs agents was spawned by reasonable suspicion that the package contained contraband. *See United States v. Longmire,* 761 F.2d 411, 418 (7th Cir.1985) (citing *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

This Court is not unmindful of the possible constraints its ruling may have on the Customs Service. Nevertheless, this Court remains bound by the clear import of the

---

6. The United States specifically cites 19 C.F.R. § 145.2(b) which provides:

   All mails arriving from outside the Customs territory of the United States which is to be delivered within the Customs territory of the United States, ... is subject to Customs examination,....

   The Ninth Circuit, however, has held that this regulation implements § 482 and "thus necessarily incorporates the 'reasonable cause to suspect' test adopted by the statute." *DeVries v. Acree,* 565 F.2d 577, 578 (9th Cir.1977).

7. In *Most, supra,* the Ninth Circuit was faced with the identical issue confronting this Court. In *Most,* Customs officials opened and searched the contents of an inbound package mailed from Thailand. The Court, however, declined to resolve what it perceived to be a statutory conflict between §§ 482 and 1581, because it found that, in any event, the Customs agent had

reasonable cause to suspect that the package contained contraband thereby satisfying the stricter standard of § 482. *Most,* 789 F.2d at 1415. The Court also declined to decide whether § 482 limits the governments power to inspect incoming packages and letter mail, as opposed to first class mail, from abroad. *Id.* Nevertheless, the Ninth Circuit's subsequent treatment of *DeVries* in *Sandoval–Vargas* provides fairly explicit guidance to the District Courts in this Circuit as to its desired treatment of this issue.

8. The Ninth Circuit also noted that "[o]n the other hand, it seems reasonable to assume that searches of trunks that accompany a traveler crossing a border would be subject to the same standard—no need for individualized suspicion —that applies to searches of other luggage or packages carried by the traveler or located in his vehicle." *Id.* at 1140 n. 18.

Ninth Circuit's opinions in *DeVries* and *Sandoval–Vargas* until otherwise instructed.

### B. "Reasonable Suspicion"

██ "The 'reasonable cause to suspect' test adopted by [19 U.S.C. § 482] is ... a practical test which imposes a less stringent requirement than that of 'probable cause' imposed by the Fourth Amendment." *Ramsey*, 431 U.S. at 612–13, 97 S.Ct. at 1977. "To justify a search under § 482 on the basis of reasonable suspicion, an official must be aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the package contains illegal material. In passing on the legality of such a search [the Court] must consider all the surrounding circumstances." *Most*, 789 F.2d at 1415 (citations omitted). In *Most*, for example, the Ninth Circuit found in a similar factual situation that an agent's knowledge that the "package was coming from a source country for drugs (Thailand); his observance that the label described an unusually cheap article; and the inference that the package contained 'something extra' because it weighed more than expected for the labeled description ... supported the conclusion that the agent had 'reasonable cause to suspect' that the package contained contraband when he opened it." *Id.* at 1416. *See also Ramsey, supra* (reasonable suspicion where letters from a drug source country were heavier than normal letters, and felt as if they contained something other than correspondence); *United States v. Safari*, 849 F.2d 891 (4th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988) (reasonable suspicion where package from a known source country for drugs and felt powdery when squeezed).

### C. Factual Findings

Based upon the evidence presented, this Court makes the following findings concerning the facts and circumstances surrounding the September 7, 1988 search by Customs officials of the package bearing the name and address of the defendant:

1. The Customs Service considers Taiwan a "high risk" source country for narcotics as well as for undervalued commercial shipments and prohibited meat and agricultural products. In this regard, the Customs Service Mail Branch located at the Honolulu International Airport ("Mail Branch") closely scrutinizes substantially all packages originating from Taiwan.

2. On September 2, 1988 at the Mail Branch, Customs Inspector Hayashi opened and searched a package mailed from Taiwan based upon his observation that it weighed more than expected for the labeled description (tea). Upon opening the package, he discovered a quantity of methamphetamine.

3. Having been informed of the discovery by Inspector Hayashi, Mail Branch Supervisor Mix alerted the Mail Branch personnel that methamphetamine addressed to an individual at King Street, Honolulu, had been intercepted in a brown paper wrapped cylinder that declared to contain tea in Chinese characters and was distinctly addressed with a felt tip pen.

4. Later that day, Inspector Hayashi and Customs Supervisor Mix convened a meeting with all the Customs personnel stationed at the Honolulu International Airport to brief them about what had transpired at the Mail Branch.

5. On September 7, 1988 Inspector Theard, while observing incoming international mail at the Mail Branch, noticed a package bearing the name and address of the defendant having some of the same characteristics as the package intercepted by Inspector Hayashi on September 2, 1988. Being unable to read the Chinese characters depicted on the declaration form, Inspector Thread set the subject package aside in a bin for further examination.

6. The subject package soon thereafter came into the possession of Inspector Culler who was temporarily assigned to the Mail Branch from his usual post at the Honolulu International Airport. Inspector Culler, however, was present at the September 2, 1988 airport briefing and was again alerted, when he reported to the Mail

Branch, to watch out for packages originating from Taiwan bearing similarities to the package intercepted by Inspector Hayashi.

7. Inspector Culler, who had the discretion to open or pass the subject package, proceeded to examine it, noting that it came from Taiwan, was going to a Chinatown address, and declared to be tea, a non-dutiable, non-contraband substance. Inspector Culler then picked the subject package up to get a sense of its weight and noticed that in his experience "it was too heavy and unbalanced at one end" to be a uniform package of tea. Based on these facts, Inspector Culler opened and searched the subject package and discovered the methamphetamine.

8. This Court finds that the specific and objective facts articulated by Inspector Culler justified a substantial suspicion that the package, addressed to the defendant contained contraband when he opened it.

III. *Conclusion*

Because Inspector Culler had reasonable cause to suspect that the package addressed to the defendant contained contraband, his ensuing search and seizure was made lawfully pursuant to 19 U.S.C. § 482.

THEREFORE, IT IS HEREBY ORDERED that the defendant's Motion to Suppress Tangible Evidence is DENIED.