**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**John J. HARRINGTON,**
**Defendant-Appellee.**

No. 81–1672.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1982.

Decided July 13, 1982.

Rehearing and Rehearing En Banc Denied Sept. 7, 1982.

---

**I**

During an investigation of a large, drug-smuggling conspiracy, officers of the Customs Service conducted a warrant-authorized search of Harrington's residence in Del Mar, California. They seized a variety of drugs, $100,000 in currency, and other items that implicated him as a dealer of smuggled drugs. It is undisputed that the procedure used to obtain the search warrant complied fully with Fed.R.Crim.P. 41, and that the search complied fully with the warrant and the fourth amendment. Indeed, the district court found that "the application for and execution of the warrant was technically perfect." *United States v. Harrington*, 524 F.Supp. 292, 296 (E.D.Cal.1981) (on reconsideration of earlier order to suppress reported at 520 F.Supp. 93).

The only reason given for suppressing the evidence was that under an Executive Reorganization Plan, the customs officers should not have conducted the investigation that led to the search and seizure. The Plan consolidated in the Drug Enforcement Administration (DEA) all responsibility for investigations of federal drug-law violations except when conducted "at regular inspection locations at ports of entry or anywhere along the land or water borders of the United States." Reorg. Plan No. 2 of 1973, 3A C.F.R. 263, 264 (1973), *reprinted in* 87 Stat. 1091 (1973), *amended by* Act of Mar. 16, 1974, Pub.L.No.95–253, 88 Stat. 50.[1] Its purpose was to make the enforcement of federal drug laws more efficient. *See* President's Message to Congress Transmitting Reorganization Plan, 1973 U.S.Code Cong. & Ad.News 3554.

In order to deter the Customs Service from usurping authority reserved for the DEA, the district court thought it necessary to suppress evidence produced by an investigation not in compliance with the Reorganization Plan. Nothing in the Plan or its

Steven L. Basha, U. S. Customs Service, (William C. Bryson, Dept. of Justice, on the brief) Washington, D. C., for plaintiff-appellant.

Alan M. May, North Hollywood, Cal., for defendant-appellee.

Before CHOY, HUG and NELSON, Circuit Judges.

CHOY, Circuit Judge:

The district court suppressed evidence on which the Government relied. Because there was no adequate reason to apply the exclusionary rule, we reverse and remand with instruction for the district court to admit the evidence.

1. While the Reorganization Plan vests in the DEA exclusive responsibility for inland drug investigations, the Attorney General may request the assistance of other agencies to help enforce federal drug laws. *See* 21 U.S.C. § 873(b); Exec. Order No. 11727, 38 Fed.Reg. § 18357 (1973). The parties debate vigorously whether in this instance the Attorney General, acting through his subordinates, solicited help from Customs. The district court did not resolve this factual dispute, and the record is not sufficiently clear for us to resolve it independently.

history suggests that the President or Congress favored the use of the exclusionary rule to deter noncompliance. Rather, the district court based its decision on *United States v. Soto-Soto,* 598 F.2d 545 (9th Cir. 1979).

## II

In *Soto-Soto,* we approved the suppression of evidence seized during a warrantless border search by an FBI agent looking for stolen pickup trucks. The Government's contention, which we rejected, was that 19 U.S.C. § 482 exempted every search at the border from the warrant requirement. Section 482 actually applies only when "officers or persons authorized to board or search vessels" are enforcing customs or immigration laws.[2] *See Klein v. United States,* 472 F.2d 847, 849 (9th Cir. 1973); *Alexander v. United States,* 362 F.2d 379, 382 (9th Cir.), *cert. denied,* 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966). The border search in *Soto-Soto* was therefore conducted by an unauthorized person (there was no claim that the FBI agent could board or search vessels) and for an unauthorized purpose (the FBI agent was engaged in general law enforcement). In explaining the use of the exclusionary rule, we noted: "Statutory law was disregarded. Exclusion of the evidence seized is the only available effective deterrent of such disregard." *Soto-Soto,* 598 F.2d at 550.

Although this language seems expansive, it must be understood as part of our constitutional analysis in *Soto-Soto.* Border searches raise an unusual constitutional dilemma:

2. Section 482 provides:
   Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he

There is the interest of the federal government in regulating and protecting its borders. There is also the interest of the defendant in the constitutional guarantee to protection from unreasonable search and seizure under the Fourth Amendment. These interests require careful balancing.

*Id.* at 548. In striking the balance, we have in effect held that Congress may declare certain searches normally violative of the fourth amendment to be constitutional when conducted at the borders. *See, e.g., Alexander,* 362 F.2d at 381–82. Because this creates an exception to standard constitutional practices, we enforce its limitations with great care. *See Soto-Soto,* 598 F.2d at 548. A warrantless border search by an FBI agent for general law-enforcement purposes falls outside § 482. And when measured against normal fourth amendment standards, the search in *Soto-Soto* was patently unreasonable. *Id.* at 549. We approved the suppression of the evidence seized not merely because the search violated a statute, but because the statutory violation undermined constitutional protections. The holding and the discussion of the exclusionary rule in *Soto-Soto* thus hinge on the border-search context; they do not apply in general or to the case before us.

## III

The Government urges us to hold that *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), implicitly overruled *Soto-Soto.* In *Payner,* the Supreme Court "reaffirmed the established rule that a court may not exclude evidence under the Fourth Amendment unless it

may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial.

finds that an unlawful search and seizure violated the defendant's own constitutional rights." *Id.* at 731 (citations omitted).

But, as the foregoing discussion shows, *Soto-Soto* involved an unconstitutional search. We have previously so read *Soto-Soto*. Both *United States v. Vassar*, 648 F.2d 507, 511 n.3 (9th Cir. 1980), *cert. denied*, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360 (1981), and *United States v. Johnson*, 641 F.2d 652, 659 n.5 (9th Cir. 1980), contain footnotes stating: "In *Soto-Soto*, it was necessarily found that a violation occurred because a border search not conducted by a customs or immigration officer is, by definition, 'unreasonable.'" The word "unreasonable" harks back clearly to the fourth amendment prohibition against "unreasonable searches and seizures." Notwithstanding language in *Soto-Soto* apparently reserving judgment on whether the search intruded into the accused's right to privacy, *Soto-Soto*, 598 F.2d at 550, the opinion leads logically to the conclusion that the search was unconstitutional.

We therefore must wait for another day to decide whether after *Payner* the exclusionary rule can ever apply absent some constitutional violation. The Seventh Circuit Court of Appeals believes it can. *United States v. Cortina*, 630 F.2d 1207, 1214–17 (7th Cir. 1980). We express no opinion on the matter at this time.

### IV

■ We hold only that a court should not automatically suppress evidence seized by an officer who, for some technical reason, should not have conducted the search. *Cf. United States v. Pennington*, 635 F.2d 1387, 1390 (10th Cir. 1980) (refusing to suppress evidence seized by a state officer not authorized by Fed.R.Crim.P. 41 to obtain or execute a federal warrant), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981); *United States v. Burke*, 517 F.2d 377, 386–87 (2d Cir. 1975) (same). There must be an exceptional reason, typically the protection of a constitutional right, to invoke the exclusionary rule. We can find no exceptional reason here.

REVERSED and REMANDED.