# Authority of the Customs Service to Offer Rewards for Information Concerning the Whereabouts of Indicted Drug Traffickers

The Customs Service is not authorized to offer financial rewards for original information on the whereabouts in the United States of high-level, international drug traffickers who are under indictment.

June 15, 1989

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This responds to your request of June 12, 1989, for our analysis of whether there exists authority for the Customs Service to create a program in which financial rewards of up to five million dollars will be offered for original information on the whereabouts in the United States of high-level, international drug traffickers who are under indictment. Our review indicates that, although several statutes expressly authorize the payment of a reward to informants,[1] they do not authorize the Customs Service to offer the kind of reward proposed here. We also believe that the Customs Service may not use its general appropriations to make such payments.

## I. Background

The Customs Service proposes to initiate a program, code named Operation PALADIN. The purpose of the program would be to make available sums of money to individuals who provide the Customs Service original information on the whereabouts in the United States of certain high level, international narcotic traffickers and money launderers who have been indicted and are wanted for violation of laws enforced by the Customs Service. The amount of the award would be determined by the importance of the violator, with awards of up to five million dollars to be

---

[1] Several other statutes authorize various department heads to pay rewards in connection with offenses under laws peculiarly identified with their departments *E g* , 18 U S.C § 3056(c)(1)(D) (matters within the jurisdiction of the Secretary of the Treasury relating to the Secret Service), 14 U.S.C § 644 (matters within the jurisdiction of the Coast Guard), 50 U S.C. §§ 47a-47f *(offenses involving nuclear materials and atomic weapons)* A reward of up to $100,000 may be paid for information concerning presidential assassination, kidnapping or assault 18 U S C § 1751(g)(Supp.).

available for information leading to the arrest of very high level fugitives in the United States.

Operation PALADIN would be aimed also at heightening public awareness of the identities of international drug kingpins. This would be accomplished by maximizing media exposure, including newspapers, television, magazines and posters.

## II. Statutes Expressly Authorizing Rewards

Several statutes authorize the payment of rewards for information leading to the arrest or capture of various law violators. None of these statutes, however, authorizes the Customs Service to offer such payments. The only statutory authority relating to reward offers that expressly includes the Customs Service is 19 U.S.C. § 1619. That provision, however, only authorizes payments to persons who seize items subject to seizure and forfeiture or who furnish information "concerning ... any fraud upon the customs revenue, or ... [a] violation of the customs laws or the navigation laws ... [which] leads to a recovery of ... any duties withheld, or ... [of] any fine, penalty, or forfeiture incurred."[2] 19 U.S.C. § 1619. It is plain that this provision cannot be relied upon as authority for Operation PALADIN.

Similarly, it is clear that the other statutes that authorize various government officials to offer rewards cannot be the basis for Operation PALADIN. For example, 18 U.S.C. § 3059, which authorizes the payment of rewards for information leading to the capture of anyone charged with violating a federal criminal law, is administered by the Attorney General, not the Customs Service.[3] The same is true of 28 U.S.C. § 524(c), which establishes the Department of Justice Assets Forfeiture Fund, which is available to the Attorney General for payments for information relating to

---

[2] The reward "may not exceed $250,000 for any case " 19 U S.C. § 1619(c)

[3] 18 U S.C § 3059 provides:

(a)(1) There is authorized to be appropriated, out of any money in the Treasury not otherwise appropriated, the sum of $25,000 as a reward or rewards for the capture of anyone who is charged with violation of criminal laws of the United States . . and an equal amount as a reward or rewards for information leading to the arrest of any such person, to be apportioned and expended in the discretion of, and upon such conditions as may be imposed by, the Attorney General of the United States. Not more than $25,000 shall be expended for information or capture of any one person.

...

(b) The Attorney General each year may spend not more than $10,000 for services or information looking toward the apprehension of narcotic law violators who are fugitives from justice

[4] The Department of Justice Asset Forfeiture Fund is available to the Attorney General for the purpose of the "payment of awards for information or assistance directly relating to violations of the criminal drug laws of the United States," 28 U S C. § 524(c)(1)(B), and the "payment of awards for information or assistance leading to a civil or criminal forfeiture under the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U S.C. 800 *et seq.*) or a criminal forfeiture under the Racketeer Influenced and Corrupt Organizations statute (18 U.S.C. 1961 *et seq* ), at the discretion of the Attorney General." 28 U.S.C. § 524(c)(1)(C).

violations of the drug laws.[4] A third statute that authorizes the offer of rewards for information is chapter 204 of title 18, United States Code. The rewards provided for in this chapter, which concern only terrorist acts,[5] are also administered by the Attorney General.[6] A fourth statute authorizing the offer of a reward for information is 22 U.S.C. § 2708. This section, which is the only provision that is expressly international in scope, allows the Secretary of State, with the concurrence of the Attorney General, to pay a reward to any individual who furnishes certain helpful information.[7] Finally, 21 U.S.C. § 886(a) requires that the reward offers it authorizes regarding drug violations be administered by or receive the approval of the Attorney General.[8]

In short, we believe it is undisputable that none of the statutes expressly authorizing the payment of reward offers authorizes the Customs Service to create a program such as Operation PALADIN.

---

[5] As used in chapter 204, the term "act of terrorism" is defined to mean any activity that·

    (A) involves a violent act or an act dangerous to human life that is a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; and

    (B) appears to be intended—

        (i) to intimidate or coerce a civilian population,

        (ii) to influence the policy of a government by intimidation or coercion; or

        (iii) to affect the conduct of a government by assassination or kidnaping.

18 U.S C. § 3077(1).

[6] Pursuant to 18 U.S C § 3071, the Attorney General may reward any individual who furnishes information—

        (1) leading to the arrest or conviction, in any country, of any individual or individuals for the commission of any act of terrorism against a United States person or United States property, or

        (2) leading to the arrest or conviction, in any country, of any individual or individuals for conspiring or attempting to commit any act of terrorism against a United States person or United States property.

It should also be noted that rewards under this section may not exceed $500,000 and if greater than $100,000, must be made with the personal approval of the President or Attorney General. 18 U.S.C § 3072

[7] 22 U.S.C. § 2708(b)(1) provides that the Secretary of State, with the concurrence of the Attorney General, may offer money for any information leading to—

    (A) the arrest or conviction in any country of any individual for committing, primarily outside the territorial jurisdiction of the United States, any narcotics-related offense if that offense involves or is a significant part of conduct that involves—

        (i) a violation of United States drug laws which occurs primarily outside the territorial jurisdiction of the United States and which is such that the individual would be a major violator of such laws; or

        (ii) the killing or kidnapping outside the territorial jurisdiction of the United States of [certain officers]; or

        (iii) an attempt or conspiracy to do any of the acts described in clause (i) or (ii)·

Rewards made pursuant to section 2708 are not to exceed $500,000, with those over $100,000 requiring the personal approval of the Secretary of State or the President. 22 U.S.C. § 2708(c). Any award made must be reported to Congress within 30 days. 22 U.S.C. § 2708(h)

[8] 21 U.S C § 886(a) authorizes the Attorney General to pay any person "from funds appropriated for the Drug Enforcement Administration, for information concerning a violation of this subchapter, such sum or sums of money as he may deem appropriate." The subchapter referenced in this section is subchapter I, "Control and Enforcement," chapter 13 ("Drug Abuse Prevention and Control") of title 21, United States Code.

149

## III. Inherent Authority to Use General Appropriations

We also conclude that the Customs Service is not authorized to fund from its general appropriations a program that would publicly and routinely offer large awards for the provision of original information on the location in the United States of indicted drug traffickers. Customs may use its general appropriation only for activities that it is authorized by statute to undertake. Customs, however, does not have as part of its statutory mission the general responsibility to investigate the location of indicted drug dealers; it is authorized under Reorganization Plan No. 2 of 1973, 87 Stat. 1091 (1973), only to undertake activities related to the search and seizure of drugs at the borders of the United States. Accordingly, we do not believe there is a nexus between Customs' limited enforcement authority and PALADIN's general reward program sufficient to justify the use of Customs' appropriations for such a program.

This Office has long been of the view that Reorganization Plan No. 2 severely restricts the jurisdiction of the Customs Service in drug enforcement matters. *See Authority of the Customs Service to Seize or Forfeit Property Pursuant to 21 U.S.C. § 881*, 12 Op. O.L.C. 267 (1988) (Customs Service does not have independent forfeiture authority in light of the Reorganization Plan's transfer of drug enforcement authority to the Department of Justice); *see also* Memorandum for the Deputy Attorney General, from Douglas W. Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel (June 3, 1986) (19 U.S.C. §§ 1589 and 1589(a) do not provide the Customs Service with general narcotics law enforcement authority); Memorandum for the Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: United States Customs Service Jurisdiction* (Dec. 23, 1983) (the Customs Service does not have independent enforcement authority over title 21 drug offenses).

Our conclusions with respect to the Customs Service's enforcement authority have been grounded in the clear language of the Reorganization Plan, which transferred "all intelligence, investigative, and law enforcement functions" pertaining to "the suppression of illicit traffic in narcotics, dangerous drugs, or marihuana" from the Department of Treasury to the Department of Justice. Reorg. Plan No. 2 of 1973, *supra*. The Plan also contained a clause (the "retention clause"), which provided in part that "[t]he Secretary of Treasury shall retain, and continue to perform, drug intelligence, investigative and enforcement functions, to the extent that they relate to searches and seizures of illicit narcotics, dangerous drugs, or marihuana or to the apprehension or detention of persons in *connection therewith, at regular inspection locations at ports of entry or anywhere along the land or water borders of the United States.*" *Id.* (emphasis added). The proviso immediately following the retention clause states, moreover, that any drugs or drug-related evidence seized by

the Customs Service at those points "shall be turned over forthwith to the jurisdiction of the Attorney General." Read in tandem, the retention clause and the proviso indicate that the Customs Service's narcotics law enforcement authority is limited to enforcing customs laws at the borders. *See* 12 Op. O.L.C. at 274 n.24.

It is a cardinal principle of appropriation law that an agency may use its general appropriation to fund activities only if those activities are undertaken pursuant to its statutory mission. As we discussed above, the Customs Service's mission encompasses only the investigation, search for and seizure of drugs at the borders of the United States, and arrests and detentions related to such law enforcement efforts. Consequently, any general program of public rewards funded from the Customs Service's appropriations must be limited to activities relating to this mission.

Operation PALADIN relates to the general enforcement of the narcotics laws, not to the Customs Services' more circumscribed mission. PALADIN contemplates that any drug trafficker who has been indicted may be the subject of a reward for information. There is no requirement that the reward directly facilitate the seizure of drugs located at the border or the arrest of a drug offender in possession of drugs at the border. Consequently, we believe that there is no nexus between Operation PALADIN's broad and general program of rewards and the limited law enforcement mission of Customs.

We have considered and rejected the argument that Operation PALADIN is incidental to the Customs Service's authority under 19 U.S.C. § 1589(a) to

> make an arrest without a warrant for any offense against the United States committed in the officer's presence or for a felony, cognizable under the laws of the United States committed outside the officer's presence if the officer has reasonable grounds to believe that the person to be arrested has committed or is committing a felony.

This Office has previously determined that the purpose of this provision was merely to clarify that the Customs Service has arrest authority to the full extent of its jurisdiction. OLC Memorandum of June 3, 1986, *supra*, at 11.[9] It is plain that this provision did not redefine the jurisdictions of the Customs Service and the DEA that had been carefully defined in the Reorganization Plan of 1973.

In conclusion, we believe that the Customs Service does not possess the legal authority to establish Operation PALADIN. No statute expressly

---

[9] At least one court had held that warrants pursued and drug arrests made by Customs officers acting under the direction of DEA were not authorized. *United States v Harrington*, 520 F. Supp. 93, 95 (E.D. Cal 1981), *rev'd on other grounds, United States v. Harrington*, 681 F.2d 612 (9th Cir 1982)

authorizes Customs to offer rewards for information leading to the arrest of fugitives. Nor is the offering of such rewards either necessary or incidental to its duties as defined by the Reorganization Plan of 1973.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*